1   Larry D. Webb Sbn 229344
    Law Offices of Larry Webb
2   484 Mobil; Suite 43
    Camarillo, Ca 93010
3   Phone 805 987 1400
    Email Webblaw@GMAIL.COM
4   Attorney for Castle Real Estate Investments,
    LLC
5

6                   UNITED STATES BANKRUPTCY COURT

7                   CENTRAL DISTRICT OF CALIFORNIA

8                        NORTHERN DIVISION

9

10

11

12   In re: Michael A. Hershman          Chapter 7
                                         Case No:9:20-bk-10254-MB
13                          Debtor
                                         Adversary Case No: _____
14   In re: Linda J. Hershman

15                      Joint Debtor     COMPLAINT TO DETERMINE
                                         DISCHARGABILITY UNDER
16                                       11 U.S.C §§523(a)(2), 523(a)(4),523(a)(6)

17

18   Castle Real Estate Investments, LLC
                                         STATUS CONFERENCE
19                          PLAINTIFF    Date:
                                         Time:
20                                       Dept:
     vs.
21   Michael A. Hershman
     Linda J. Hershman
22
                        DEFENDANT[S]
23

24

25

26       PLAINTIFF Castle Real Estate Investments, LLC  "Plaintiff" alleges as follows:

27

28                              Page 1

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. § 1334.

2.      This is a core proceeding under 28 U.S.C. § 157(b)(2)(H), (I) & (J).

3.      Pursuant to FRBP 7008, and FRBP 7012(b) Plaintiff consents to entry of final orders or judgment by the bankruptcy court.

4.      This is an adversary proceeding to determine, among other things, the dischargeability of a debt pursuant to FRBP 4007, and 7001; and 11 U.S.C. §523(a)(2)(A), 523(a)(4) and 523(a)(6)

5.      This Adversary Proceeding is one arising under Case No. 9:20-bk-10254-MB filed under Chapter 7 of Title 11 on 2/20/2020, now pending in this Court.

6.      The initial 341(a) meeting was set for 4/27/2020; pursuant to FRBP4007 or by order of this court the time to file this adversary complaint expires on 5/15/2020.

7.      Additionally, this is the proper venue, pursuant to 28 U.S.C. 1401, because Defendant is subject to suit in this District.

## PARTIES

8.      Defendant Michael A. Hershman and Linda J. Hershman [Defendants] are husband and wife filing a joint bankruptcy petition

9.      Debtors' principal residence is 3063 Los Robles Road Thousand Oaks, CA 91362.

10.     Debtors at all times mentioned herein regularly conducted business in the County of Ventura, California.

11.     Plaintiff, Castle Real Estate Investments, LLC ["Company"] is a California Limited Liability Company in good standing.

12.     Michelle Halliwell is the CEO and single member of Castle Real Estate Investments, LLC. See Exhibit 11 page 72.

## FACTUAL ALLEGATIONS

13.     Debtor Michael A. Hershman is the debtor in the related Chapter 7 Case.

14.     Debtor Michael A. Hershman is also known as "Tony Hershman."

15.     Debtor Linda J. Hershman is the joint debtor in the related Chapter 7 Case.

16.    On 2/20/2020 Debtor and Joint Debtor filed their joint bankruptcy case # 9:20-bk-10254-MB.

17.    Debtor and Joint Debtor's schedules list Castle Real Estate Investments, LLC as a unsecured creditor due $200,000.00.  See Exhibit 7 page 38.

18.    Plaintiff Castle Real Estate Investments, LLC asserts its claim to be $905,000.00 plus interest, penalties and attorney fees.

19.    Related Bankruptcy case 1:19-bk-10202-VK [now 1:19-bk-10202-MB] was filed on 01/28/2019 by Michael Anthony Hershman as president of Besorat Investments Inc. [hereinafter "BII"] See Exhibit 5 page 34.

20.    On 09-24-2018 Tony Hershman on behalf of BII executed an operating agreement. See Exhibit 1 page 17.

21.     On 09-24-2018 Tony Hershman on behalf of BII executed a management agreement with Company.  See Exhibit 2 page 24.

22.    On 09-24-2018 Tony Hershman personally guaranteed payments to Company. See Exhibit 3 page26.

The Operating agreement

23.    On or about 09-24-2018 Besorat Investments Inc, by its president Tony Hershman contracted with Company to be the non-member manager of Company. See Exhibit 1, page 17.

24.    The 09-24-2018 agreement is titled "AMENDMENT OF OPERATING AGREEMENT FOR CASTLE REAL ESTATE INVESTMENTS LLC, A CALIFORNIA LIMITED-LIABILITY COMPANY.  [Herein after the "Operating Agreement"] SEE EXHIBIT 1 page 14

25.    The 9-24-2018 Amended Operating agreements describes Castle Real Estate Investments LLC, a limited liability company organized under the laws of the State of California as the "Company."

26.    The 9-24-2018 Amended Operating agreements describes Michelle Halliwell, as the "Member" or Members."

27.    The 9-24-2018 Amended Operating agreements was signed by Michelle Halliwell, Member.

COMPLAINT TO DETERMINE DISCHARGABILITY

28. The 9-24-2018 Amended Operating agreement recital names three real properties; 1) 2285 W. 26th Street, Los Angeles, CA ("26th Street Property"), 2) 4743 Hillard Road , La Canada Flintridge, CA ("Hillard Property") , and 3) 779 Briarcliff, Thousand Oaks, CA ("Briarcliff Property").  Herein after the "Company properties".

29. Tony Hershman signed the Operating agreement described in Paragraph 24 above as president of Besorat Investments Inc., See Exhibit 1 page 17.

30. Tony Hershman agreed to be bound by the terms of the operating agreement.

31. The 9-24-2018 operating agreement provides that Tony Hershman will execute a concurrent personal guarantee for payment of $860,653.33 to Company.

32. The 9-24-2018 operating agreement contains the following term:

> Section 5.9: Guaranteed Return of Company's Total Investment:
> In the event the proceeds from the sales of Hillard Property and Briarcliff
> Property are insufficient to provide e Company with a return of Company's
> total investments of $860,653.33 in 26th Street Property, Hillard Property, and
> Briarcliff Property as provided for in Section 5.6 8. herein, Manager agrees to
> pay Company the difference between the disbursements Company receives
> from the sales of Hillard Property and Briarcliff Property and what Company is
> owed , if any, for its total investments of $860,653.33 in 26th Street Property,
> Hillard Property, and Briarcliff Property. Michael A. Hershman, Manager's
> President, agrees to execute a personal guaranty, concurrent with the execution
> of this Amendment, wherein he agrees to personally guarantee a return of the
> Company's total investment of $860,653.33.

33. The 9-24-2018 operating agreement provides that Tony Hershman will execute a concurrent personal guarantee for the payment of 5% interest on Company's investment.

> Section 5.10
> In the event the proceeds from the sales of Hillard Property and Briarcliff
> Property are in sufficient to fund returns of five percent (5%) on Company's
> total investments of $860,653.33 equaling a total return of $43,032.66 as set
> forth herein in Section 5.6 D. for 26th Street Property, Hillard Property, and

COMPLAINT TO DETERMINE DISCHARGABILITY

Briarcliff Property , Manager agrees to pay the difference between the
disbursements Company receives from the sales of Hillard Property and
Briarcliff Property and what Company is owed , if any. Michael A. Hershman,
Manager's President, agrees to execute a personal guaranty, concurrent with
the execution of this Amendment, wherein he agrees to personally guarantee a
five percent (5%) return on the Company's total investment of $43 ,032 .66.

Manager Agreement

34.    On 09/24/2018 Tony Hershman as president of Besorat Investments Inc. signed
Amendment of Manager Agreement for Castle Real Estate Investments LLC, a California
Limited Liability Company.  See Exhibit 2 page 24.

35.    The amended Manager Agreement describes Castle Real Estate Investments LLC, a
California Limited Liability Company as the "Company".

36.    The amended Manager agreement describes Besorat Investment Inc as "Manager".  See
Exhibit 2 page 19.

37.    The amended manager agreement specifies that Company is exclusively managed by
Manager.

38.    The amended manager agreement identifies the Manager's powers.

39.    The amended manager agreement identifies limitations on the Manager's powers.

40.    The amended manager agreement identifies the Manager's liability for performance of
duties.

41.    The Amendment of Operating Agreement [Exhibit 1], the amendment of the manager
agreement [Exhibit 2] and the personal guarantee [Exhibit 3] were all signed on 09/24/18 by
Tony Hershman.

42.    Plaintiff Company's total investment in the 26th Street Property, Hillard Property, and
Briarcliff Property was $860,653.33.

Personal Guaranty

43.    On 09/24/2018 Tony Hershman executed a personal guarantee.  [Hereinafter the
"Guarantee"] See Exhibit 3, page 26.

44.    Pursuant to the 9/24/2018 personal guaranty, Tony Hershman is the "guarantor."

45.    Pursuant to the 9/24/2018 personal guaranty, Besorat Investment Inc. is the principal debtor.

46.    Pursuant to the 9/24/2018 personal guaranty, Tony Hershman promised to answer for the debt, default or miscarriage of Besorat Investments Inc. under the management agreement.  See Exhibit 3 page 26.

47.    The 09/24/2018 Guarantee was executed pursuant to the terms of the 09/24/2018 operating agreement.

48.    The Personal Guarantee is unconditional.

49.    The Personal Guarantee is a continuing guarantee.

50.    The Personal Guarantee is irrevocable.

51.    The Personal Guarantee provides for attorney fees and other expenses.

52.    By email, 01/28/2019 at 2:14 PM [14:14] Debtor Tony Hershman as president of Besorat Investments resigned as manager of Company, see exhibit 4 pages 30-31.

53.    The amended Managers agreement provides that:

> The resignation shall be without prejudice to the rights, if any, of the Company
> under this Amendment or under the Amendment to Operating Agreement.

54.    On 01/28/2019 at 14:52 bankruptcy case 1:19-bk-10202-VK [now 1:19-bk-10202-MB] was filed by Michael Anthony Hershman as president of Besorat Investments Inc. See Exhibit 5 page 34.

55.    On 01/28/2019 Besorat Investments Inc. was insolvent.

56.    Debtor and joint debtor each held a 50% equity stake in Besorat Investment Inc.

57.    By email 01/28/2019 at 3:40 PM [15:40] Tony Hershman reaffirmed his personal guarantee stating, "Any deficit after that liquidation will be dealt with personally."  See Exhibit 4 page 29.

58.    The Besorat Bankruptcy identified Company as an unsecure creditor with a claim in the amount of $200,000.00.  See Exhibit 6 page 36.

- 6 -

COMPLAINT TO DETERMINE DISCHARGABILITY

### FIRST CLAIM FOR RELIEF
False Pretenses, False representation and actual fraud
Nondischargability on breach of guarantee
11U.S.C.§523(a)(2)(A)

59.    Plaintiff refers to, reallege and incorporate by reference Paragraphs 1 through 58, as if set forth in full herein.

### BREACH OF GUARANTEE

60.    Defendant Tony Hershman signed a personal guarantee for the BII debt to Company.

61.    Defendant made has made no payment to Company on the personal guarantee.

62.    To except a debt from discharge section 523(a)(2)(A),  Plaintiff must show by a preponderance of the evidence five elements: (1) misrepresentation, fraudulent omission, or deceptive conduct; (2) knowledge of the falsity or deceptiveness of such representation, omission, or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor; and (5) damage to the creditor proximately caused by its reliance.

63.    BII, the principal under the personal guarantee is a corporation established under the laws of the state of California on February 15, 2017. Michael A. Hershman is the President, CEO and he and his wife Linda are the sole shareholders.  See Exhibit 8 page 41:5-7.

64.    On the BII petition date, the BII owned 15 properties, all in the greater southern California area. None of the properties were occupied. BII had only minimal funds in its bank accounts – less than $1,000. See Exhibit 8 page 41:5-7

65.    In the related case; 9:20-bk-10254-MB, in his objection to a motion to approve sale of property, the United States Trustee, described BII as follows:

> According to the debtor's status report, on February 15, 2017, Besorat
> Investments, Inc. ("Debtor") began operating in California. [Docket No. 47].
> Its sole shareholders are Tony Hershman and his wife Linda. Id. The Debtor
> was in the business of buying real property, single family dwellings,
> remodeling them, and selling the properties. Id. In order to obtain the necessary
> funds to remodel or rehab the properties, the Debtor obtained loans in the
> millions of dollars from investors who in return were given junior deeds of
> trust against the properties. Id. Unbeknownst to the investors, allegedly not all

- 7 -
COMPLAINT TO DETERMINE DISCHARGABILITY

of deeds of trust were properly granted and/or recorded as promised by the Debtor.

On January 28, 2019, the Debtor filed for bankruptcy relief under Chapter 11 of the Bankruptcy Code. As of the petition date, the Debtor owned 15 residential real properties located throughout Southern California and had less than $1,000 in its bank account. *Id.* Out of the 15 properties, nine were in the process of being remodeled, five were on the market and ready to be sold, and one was listed with an agent for sale "as is" but the Debtor was hoping to obtain financing to complete the work and sell it at its optimal value. *Id.* All but one of the properties had junior priority liens in favor of one or more individuals who loaned the funds to allow remodeling or a more comprehensive rehab. *Id.* The bankruptcy filing was initiated to stop non-judicial foreclosure sales on two of the properties. *Id.* See Exhibit 9 page 59

Footnote 7. The United States Trustee recognizes that a many of the Debtor's investors, who represent a significant portion of the unsecured creditors, may be victims of fraud or malfeasance by the Debtor and that the distribution from the proposed sale may be one of the few assets to provide them any return on their investment.

Exhibit 9 page 65, UST Objection

66.    Company was listed as an unsecured creditor [$200,000] in the BII bankruptcy.

67.    None of the "Company properties" were listed in the BII bankruptcy.

MISREPRESENTATION, FRAUDULENT OMISSION, OR DECEPTIVE CONDUCT

68.    Actual Fraud does not require a false representation.  An action under § 523(a)(2)(A) based on actual fraud does not require a false representation by the debtor. "Actual fraud" in § 523(a)(2)(A) encompasses forms of fraud like fraudulent conveyance schemes that can be effected without a false representation.

69.    The debtor, Michael A. Hershman, made representations in writing that he would personally guarantee payment of the Company's initial investment, in the amount of $860,653.33.

COMPLAINT TO DETERMINE DISCHARGABILITY

70.    The debtor, Michael A. Hershman, made representations in writing that he would personally guarantee payment of interest on the Company's investment in the amount of $43,032.66.

71.    The debtor, Michael A. Hershman knew that the representations were false.

72.    The debtor, Michael A. Hershman did not have the experience to manage Company.

73.    The debtor, Michael A. Hershman made those representations with the intention and purpose of deceiving the plaintiff, Castle Real Estate Investments, LLC

74.    Plaintiff relied upon the defendant's representations of guaranteed returns in contracting with defendant for management services.

75.    Plaintiff sustained losses as a proximate result of Debtor's representations in the amount of $860,654.33 in principal, $43,032.00 in interest, plus attorney fees, costs and closing expenses exceeding.

## KNOWLEDGE OF THE FALSITY OR DECEPTIVENESS
## OF SUCH REPRESENTATION, OMISSION, OR CONDUCT.

76.    BII contracted with Company for Management services on 09-24-2018.

77.    At the time BII contracted with Company, BII liabilities were greater than its assets.

78.    At the time BII contracted with Company, BII was actively seeking investors.

79.    At the time defendant contracted with Company for manager services, defendant was insolvent.

## DEBTOR TONY HERSHMAN WAS INSOLVENT
## WHEN HE SIGNED THE PERSONAL GUARANTEE

80.    Debtor's bankruptcy schedule statement of financial affairs shows negative income of ($282,473.00) for Calendar year 2018.  See Exhibit 10 page 70.

81.    At the time Tony Hershman signed the personal guarantee, he was insolvent.

## AN INTENT TO DECEIVE

82.    Intent to defraud is a question of fact. It may be inferred from the surrounding circumstances.

COMPLAINT TO DETERMINE DISCHARGABILITY

## JUSTIFIABLE RELIANCE BY THE CREDITOR

83.     Plaintiff was justified in relying upon Debtors representations that he could provide manager services to Company.

## DAMAGE TO THE CREDITOR PROXIMATELY CAUSED BY ITS RELIANCE

84.     The Plaintiff relied upon Debtor's personal guarantee obligation and expressed intention to pay Plaintiff according to the terms of the operating agreement and the amended managers agreement.  Debtor contracted with debtor for exclusive manager services which defendant personally guaranteed but was unable to provide.

### SECOND CLAIM FOR RELIEF
False Pretenses, False representation and actual fraud
Nondischargability Use of a Statement in Writing
11 U.S.C.§523(a)(2)(B)

85.     Plaintiffs refer to, reallege and incorporate by reference paragraphs 1 through 84 of this Complaint, as if set forth in full herein.

86.     The elements of Section 523(a)(2)(B) are the same as Section 523(a)(2)(A) with the additional requirement that the alleged fraud stem from a false statement in writing concerning the debtor's or an insider's financial condition.

87.     Defendants 9/24/2018 personal guarantee is a writing.

88.     Defendants 9/24/2018 personal guarantee implies the defendant had the ability to pay.

89.     Defendant did not have the ability to pay the personal guarantee on 09/24/2018.

### THIRD CLAIM FOR RELIEF
(Nondischargability of Debt Pursuant to 11U.S.C.§523(a)(4)
For fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny

90.     Plaintiffs refer to, reallege and incorporate by reference paragraphs 1 through 89 of this Complaint, as if set forth in full herein.

91.     A creditor must establish three elements to render a claim nondischargeable under section 523(a)(4): (1) express (or technical) trust; (2) that the debt was caused by fraud or defalcation; and (3) that the debtor was a fiduciary to the creditor at the time the debt was created.

92.     Pursuant to the 9/24/2018 Operating agreement, Besorat Investments Inc., Section 5.9 Manager agreed to pay Company, $860,653.33 for Company's total investment.  See Exhibit 1

1    page 16.

2    93.    Pursuant to the 9/24/2018 Operating agreement, Besorat Investments Inc., Section 5.10

3    Manager agreed to pay Company, $43,032.66 for Company's return on investment. See Exhibit

4    1 page 17.

5    94.    Pursuant to the 9/24/2018 Management agreement, Manager had exclusive management

6    power.

7    95.    Pursuant to the 9/24/2018 Management agreement Manager shall have exclusive

     authority, discretion , power, and control to manage the property, business and affairs of the

8    Company, and to make all decisions and perform all services incident to the management

9    thereof, except as otherwise provided in this Amendment or the California Revised Uniform

10   Limited-Liability Company Act (the "Act").  See Exhibit 2 page 19.

11   96.    On 01/28/2019 Besorat Investments Inc. filed for Bankruptcy under Chapter 11 of the

12   Bankruptcy code.

13   97.    On 01/28/2019 Besorat Investments Inc. was insolvent.

14   98.    Insolvent, BII was unable to pay Company the guaranteed total investment.

15   99.    Insolvent, BII was unable to pay Company the guaranteed return on investment.

16   100.    In Bankruptcy, BII was unable to pay Company the guaranteed total investment.

17   101.    In Bankruptcy, BII was unable to pay Company the guaranteed return on investment

18   102.    Tony Hershman has not paid Company the Personal guarantee total investment

19   Company, $860,653.33 for Company's total investment.  See Exhibit 3 page 26.

20   103.    Tony Hershman has not paid Company, $43,032.66 for Company's return on investment.

21   See Exhibit 3 page 26

                             FOURTH CLAIM FOR RELIEF
22                              Attorney Fees and costs

23   104.    Plaintiffs refer to, re-allege and incorporate by reference paragraphs 1 through 103 of this

24   Complaint, as if set forth in full herein.

25   105.    The personal guarantee dated 09/24/2018 provides for attorney fees and other expenses

26   incurred in enforcing the Guaranty.

27                                    - 11 -
                    COMPLAINT TO DETERMINE DISCHARGABILITY

28

**WHEREFORE,** Plaintiffs prays for judgment on the Complaint as follows:

1. For a finding the Defendant Tony Hershman breached his personal guarantee, and

2. Damages in the amount of $905,000.00 plus costs interest and fees;

3. For exception to discharge of Defendant Tony Hershman debt to plaintiffs and;

4. A determination that the Judgment that all debts and relief awarded to Plaintiffs, against Tony Hershman and Linda Hershman are determined to be nondischargeable debts of Tony Hershman and Linda Hershman;

5. For an award of attorneys' fees and costs, and that the same be imposed as against Tony Hershman and Linda Hershman.

6. For such other relief as principles of equity may require, and the Court deems just and proper.

Date 5/14/2020

_____
Larry Webb
Attorney for Plaintiff

- 12 -
COMPLAINT TO DETERMINE DISCHARGABILITY

**EXHIBIT 1**                                                  **13**

### AMENDMENT OF OPERATING AGREEMENT FOR
### CASTLE REAL ESTATE INVESTMENTS LLC,
#### A CALIFORNIA LIMITED-LIABILITY COMPANY

This AMENDMENT OF OPERATING AGREEMENT (the "Amendment") of Castle Real Estate Investments LLC, a limited liability company organized under the laws of the state of California (the "Company"), made on September 14, 2018 by Michelle Halliwell, having as an address of 638 Lindero Canyon #420, Oak Park, CA 91377, referred to herein as "Member" or "Members").

### RECITALS

WHEREAS, the Company was duly formed and organized under the laws of the state of California upon the filing of Articles of Organization with the Secretary of State on July 3, 2017

WHEREAS, By agreement dated July 3, 2017 (referred to herein as "Operating Agreement"), the Members became members of the Company.

WHEREAS, as a result of the Members' desire to change the terms of the Manager's compensation and to memorialize how the proceeds from the sales real property (previously and currently owned by the Company) at 2285 W. 26th Street, Los Angeles, CA ("26th Street Property"), 4743 Hillard Road, La Canada Flintridge, CA ("Hillard Property"), and 779 Briarcliff, Thousand Oaks, CA ("Briarcliff Property") will be allocated, the Members desire to reflect these changes herein in this Amendment.

Therefore, in consideration of their mutual covenants, the Members agree:

1. This Amendment supersedes and amends the Manager Agreement made on July 3, 2017 ("Manager Agreement"), Section 5 as to "Compensation to be Paid to the Manager" in its entirety and Section 7 (d) in its entirety.

2. Section 5.6 of the Operating Agreement (which currently provides that the Manager shall be entitled to compensation for the Manager's services as provided in the Manager Agreement) is amended in its entirety to read as follows:

#### Section 5.6: Allocation of Proceeds from Sales of Hillard Property and Briarcliff Property.

    A. The proceeds from the sales of Hillard Property and Briarcliff Property shall first be disbursed to the following third-parties through escrow as follows:

        (1) Payments to Third-Parties from Sale of Hillard Property:

- Payment of First Deed of Trust to Anchor Assets (currently $2,302,735.25) plus any other payments owed such as any loan payments and late fees owed to Anchor Assets but unpaid at close    $ TBD
- Payment of all Property Taxes (currently in default by $22,590.82):    $ TBD
- Payments to Builder (currently owe $147,000.00 plus interest at flat fee of 15% which totals $22,050.00)    $169,050.00
- Any other encumbrances on the Property (currently none)    $ TBD

1

**EXHIBIT 1**                                                        14

- Broker Commissions of 3.75% (2.5% to Selling Broker
  Plus 1.25% plus marketing costs to listing broker. Since Manager is
  neither the listing broker not the listing agent, Manager is not taking
  commission on the sale)                                          $ TBD
- Closing costs                                                    $ TBD

(2) <u>Payments to Third-Parties from Sale of Briarcliff Property</u>:

- Payment of First Deed of Trust to Anchor Assets:                $737,500.00
- Payment of all Property Taxes (currently in default by $6,264.52): $ TBD
- Payment to Builders/Construction Workers (currently $47,500.00 ~~$4,000~~ *llc MH*
  owed to "Bill", currently $4,774.00 owed to "Danny", $9,774.00
  owed to Graham)                                                 $59,500.00
- <u>Any other encumbrances on the Property (currently none)</u>  $ TBD
- Broker Commissions of ~~2.5%~~ to Selling Broker
  (~~Manager will be Real Estate Agent but is not taking~~
  ~~commission on the sale~~) *MANAGER NOT TAKING*
                                *COMMISSION FROM SALE*            $ TBD
- Closing costs                                                   $ TBD

*3.75%*
*MH*

(3) <u>Remaining Funds After Disbursement to Third-Parties</u>:

- The remaining funds from the sales of Hillard Property and Briarcliff Property will be disbursed
  by escrow to the Company's bank account.

B. After all payments have been disbursed as specified above in Section 5.6 A. herein, the proceeds
   from the sales of Hillard Property and Briarcliff Property shall next be disbursed from Company's
   bank account as follows:

(1) <u>Payments to Company</u>:

- Payment to Company for Total Investment in 26th Street Property,
  Hillard Property, and Briarcliff Property                       $860,653.33
- Payment to Company for termite tenting and cleaning costs        $ TBD

(2) <u>Payment to Tommy Thomas by Company</u>:

- Payment to Tommy Thomas ($5,000.00 introduction fee to be
  shared equally by Company and Manager). Company
  previously paid Thomas $2,000.00 and Manager previously paid
  Thomas $2,000.00 which left a $1,000.00
  balance owed. Manager owes $500.00 and Company
  owes $500.00 on remaining balance.                              $500.00

2

**EXHIBIT 1**                                                            15

C. After all payments have been disbursed as specified above in Sections 5.6 A. and 5.6 B. herein, the proceeds from the sales of Hillard Property and Briarcliff Property shall next be disbursed as follows:

(1) <u>Payments to Manager upon proof of invoices and proof of payments made</u>:

| | |
|---|---|
| • Loans advanced to Company by Manager | $16,477.72 |
| • Reimbursement to Manger for payment of marketing fee owed to former realtor | ~~$6,340.27~~  *12 762.67* |
| • Loans advanced to Company for monthly mortgage payments for Hillard Property from August 2018 going forward ($16,192.50/month plus late fees) | $ TBD |
| • Loans advanced to Company for monthly mortgage payments for Briarcliff Property from August 2018 going forward ($5,046.00/month plus late fees) | $ TBD |
| • Reimbursement to Manager for expenses such as insurance premiums, pool and lawn service, utilities and staging expenses for Hillard Property and Briarcliff Property | $ TBD |

(2) <u>Payment to Tommy Thomas from Manager</u>:

| | |
|---|---|
| • Payment to Tommy Thomas ($5,000.00 introduction fee to be shared equally by Company and Manager). Company previously paid Thomas $2,000.00 and Manager paid Thomas $2,000.00 which left a $1,000.00 balance owed. Manager owes 500.00 and Company owes $500.00 on remaining balance. | $500.00 |

D. After all payments have been disbursed as specified above in Sections 5.6 A., 5.6 B., and 5.6.C. herein, the proceeds from the sales of Hillard Property and Briarcliff Property shall next be disbursed to Company as follows:

| | |
|---|---|
| • Five percent (5%) return on Total Investment from 08/01/17 to 08/01/18 on 26th Street Property, Hillard Property, and Briarcliff Property ($860,653.33 x 5%) | $43,032.66 |

4. The Operating Agreement currently does not have a Section 5.9 and is hereby amended and supplemented to read as follows:

**Section 5.9: Guaranteed Return of Company's Total Investment:**

In the event the proceeds from the sales of Hillard Property and Briarcliff Property are insufficient to provide Company with a return of Company's total investments of $860,653.33 in 26th Street Property, Hillard Property, and Briarcliff Property as provided for in Section 5.6 B. herein, Manager agrees to pay Company the difference between the disbursements Company receives from the sales of Hillard Property and Briarcliff Property and what Company is owed, if any, for its total investments of $860,653.33 in 26th Street Property, Hillard Property, and Briarcliff Property. Michael Tony Hershman, Manager's President, agrees to execute a personal guaranty, concurrent with the execution

3

**EXHIBIT 1**                                   16

of this Amendment, wherein he agrees to personally guarantee a return of the Company's total investment of $860,653.33.

5. The Operating Agreement currently does not have a Section 5.10 and is hereby amended and supplemented to read as follows:

### Section 5.10: Guaranteed Five Percent (5%) Return on Company's Total Investment:

In the event the proceeds from the sales of Hillard Property and Briarcliff Property are insufficient to fund returns of five percent (5%) on Company's total investments of $860,653.33 equaling a total return of $43,032.66 as set forth herein in Section 5.6 D. for 26th Street Property, Hillard Property, and Briarcliff Property, Manager agrees to pay the difference between the disbursements Company receives from the sales of Hillard Property and Briarcliff Property and what Company is owed, if any.   Michael Tony Hershman, Manager's President, agrees to execute a personal guaranty, concurrent with the execution of this Amendment, wherein he agrees to personally guarantee a five percent (5%) return on the Company's total investment of $43,032.66.

6. The Operating Agreement currently does not have a Section 5.11 and is hereby amended and supplemented to read as follows:

### Section 5.11: Allocation of Profits and/or Losses:

The profits or losses (if positive, the "Profits", if negative, the "Losses") are the proceeds received from the sales of Hillard Property and Briarcliff Property minus the repayment of all obligations owed to third-parties, the Company and the Manager as set forth above in Sections 5.6, 5.9, and 5.10.

In the event there are Profits, Company and Manager shall share the Profits equally.

In the event there are Losses, the order of payment will still be followed.

To the extent that any provision in this Amendment may conflict in whole or in part with any provision in either the Manager Agreement or the Operating Agreement, the provisions in this Amendment will control and prevail.

IN WITNESS WHEREOF, all of the Members of Castle Real Estate Investments LLC, a California Limited-Liability Company have executed or caused to be executed this Amendment, effective as of the date set forth at the commencement of the document.

Dated: _9-24-18_                                By: _____

                                                Michelle Halliwell, Member

ACCEPTANCE BY NON-MEMBER MANAGER

The undersigned as the non-member Manager agrees to be bound by all terms hereof, effective as of the date of this Amendment.

                                                BESORAT INVESTMENTS INC.,
                                                A California corporation

Dated: _9/27/18_                                By: _____

                                                Tony Hershman, President

4

**EXHIBIT 1**                                                                    17

**EXHIBIT 2**                                                           **18**

## AMENDMENT OF MANAGER AGREEMENT FOR
## CASTLE REAL ESTATE INVESTMENTS LLC,
## A CALIFORNIA LIMITED-LIABILITY COMPANY

By this AMENDMENT OF MANAGER AGREEMENT (the "Amendment") made on September 14, 2018, to the Manager Agreement made on July 3, 2017 (the "Manager Agreement") between Castle Real Estate Investments LLC, a limited liability company organized under the laws of the state of California (the "Company") and Besorat Investments Inc., a California corporation ("Manager"), whose names and signatures are set forth below.  (The Company and BII are each a "Party" and collectively the "Parties.")

### RECITALS

WHEREAS, by the Manager Agreement, BII became the Manager of the Company on July 3, 2017.

WHEREAS, Michelle Halliwell, the sole member of the Company (herein "Member" or "Members") and Manager desire to change the rights, duties and compensation of BII as the Manager.

NOW THEREFORE, in consideration of their mutual covenants, the Parties agree that the Manager Agreement is amended as follows:

Section 5 as to "Compensation to be Paid to the Manager" in its entirety and Section 7 (d) in its entirety (as to procedures for distributing proceeds from escrow) of the Manager Agreement are superseded and amended in the separate Amendment to Company's Operating Agreement dated September 14, 2018 ("Amendment to Operating Agreement").

Section 2 as to "Term and Termination of Manager in its entirety, Section 3 (a) – (g) as to the "Specific Additional Duties and Rights of the Manager" in its entirety, Section 4 (a) – e) as to the "Additional Specific Powers and Limitations of the Manager and Real Estate Agent" in its entirety, and Section 7 (a) in its entirety (as to procedures for Company's operating account) of the Manager Agreement are superseded and herein amended as follows:

1. <u>Exclusive Management</u>. The Company shall be managed by the Manager. The Manager shall have exclusive authority, discretion, power, and control to manage the property, business and affairs of the Company, and to make all decisions and perform all services incident to the management thereof, except as otherwise provided in this Amendment or the California Revised Uniform Limited-Liability Company Act (the "Act").

2. <u>Time Commitments</u>.  The Manager shall devote the time, effort, and skill that it reasonably believes is necessary to conduct the affairs of the Company and to attend to all matters concomitant to the business of the Company. The Manager is not required to devote all of its time or efforts to the operation of the Company.

3. <u>Management Powers</u>.  Subject to the express limitations contained in Paragraph 4 of this Amendment and elsewhere in this Amendment, the Manager shall have all powers necessary to carry out the purposes of and to manage the business, property, and affairs of the Company, including, without limitation, the powers enumerated Corp. Code § 17701.05, including the power to:

(a)     Make contracts and guarantees, incur liabilities, act as surety, borrow money, issue evidences of indebtedness in connection therewith, refinance, increase the amount of, modify, amend, or change the terms of, and extend the time for payment of any indebtedness or obligation of the Company; and secure such indebtedness with a lien on Company assets, such as a mortgage, deed of trust, pledge, or security interest;

1

**EXHIBIT 2**                                                                              **19**

(b)      Sell, lease, exchange, transfer, convey, mortgage, pledge, and otherwise dispose of all or any part of the Company's property and assets, or any interest therein;

(c)      Lend money to the Company and otherwise assist the Members and employees;

(d)      Be a promoter, stockholder, partner, members, manager, associate, or agent of any person;

(e)      Indemnify or hold harmless any person or guarantee the payment of money or the performance of any contract or obligation of any person;

(f)      Sue on, defend, or compromise any claim or liability in favor of or against the Company or submit any such claim to arbitration or other alternative means of dispute resolution or confess a judgment against the Company in connection with any litigation with which the Company is involved; and

(g)      Retain auditors, legal counsel, and such other professional services as the Company may require and determine the appropriate compensation for the same.

4.   Limitations on Powers.   The Manager shall not be authorized to permit the Company to perform the following acts or to engage in the following transactions without first obtaining the written consent of the Members as may be indicated below:

(a)      The merger of the Company with another limited-liability company or limited partnership shall require the written consent of the Members, provided that the Members may not be required to become a general partner in the merged entity absent his or her express written consent thereto;

(b)      The merger of the Company with a corporation, a general partnership, or other person shall require the written consent of the Members of the Company;

(c)      Any alteration of the primary purpose or business of the Company as set forth in Section 2.5 of the the Company's Operating Agreement shall require the written consent of the Members of the Company;

(d)      The establishment of different classes of Members;

(e)      Any act which would prevent the Company from conducting its duly authorized business;

(f)      The confession of a judgment against the Company;

(g)      The filing of a petition under Title 11 of the United States Code on behalf of the Company; and

(h)      Any other act or transaction for which the consent of the Members is required, either in this Amendment or under the Act.

Notwithstanding any other provision of this Amendment, the written consent of the Members is required to permit the Company to incur an indebtedness or obligation greater than ten thousand ($10,000.00).   All checks, drafts, or other instruments requiring the Company to make payments for any amount shall be signed by the Members. The Members shall endorse all checks, drafts, or other evidence of indebtedness to the Company, for deposit into one of the Company's accounts.   The Manager is prohibited from signing any checks for any payments to be made from Company's bank account(s).

2

**EXHIBIT 2**                                                                20

5. <u>Meetings</u>.

(a)    The Manager or the Members may call a meeting with the other upon four (4) days' notice by mail or forty-eight (48) hours' notice delivered personally, by facsimile, telephone, or telegraph. The notice need not indicate the purpose for which the meeting is called.

(b)    The Manager or Members present at the meeting may adjourn any meeting to another time and place.

(c)    Meetings of the Manager and the Members may be held at the principal place of business of the Company.

(d)    The Manager and/or the Members may participate in any meeting by conference telephone or other similar means of communication, as long as the participating Members and Manager are able to hear each other. A Manager or Member participating in accordance with the preceding sentence shall be deemed present at the meeting.

(e)    A majority of the authorized number of Managers constitutes a quorum of Managers for the transaction of business.

(f)    The decision to have a meeting is solely that of the Manager or the Members. The provisions of this Paragraph 5 govern the procedures for conducting a meeting.   Nothing in this Paragraph 5 is intended to create a requirement that meetings be held.

6. <u>Actions Without Meetings</u>.  Any action required or permitted to be taken by the Manager may be taken without a meeting.

7. <u>Election and Removal of Manager</u>.

(a)    The Company shall initially have one Manager. The Company may, from time to time, fix the number of Managers that it shall have, upon the written consent of the Members. However, the Company may not have less than one (1) Manager at any time. Should the Members elect to increase the number of Managers to more than one or to reduce it from more than one to one, the Company's Articles of Incorporation ("Articles") shall be amended to so indicate.

(1)    Unless the Manager resigns or is removed, the Manager shall serve until a successor has been elected and qualified to serve.

(2)    The Manager shall be elected by the affirmative vote or written consent of a Majority Interest of the Members.

(3)    The Manager may, but need not, be a member. The Manager need not be individuals, residents of the State of California, or citizens of the United States.

(b)    The Manager may be removed at any time, with or without cause, upon the decision of the Members. The removal shall be without prejudice to the rights of the Manager to compensation as provided for in the Amendment to Operating Agreement.

(c)    The Manager may resign at any time by providing written notice to the Members.   The resignation shall be effective immediately upon receipt of the notice, unless a later time is specified in the notice. Acceptance of

3

**EXHIBIT 2**                                                      **21**

the resignation is not required to make it effective, unless the notice provides otherwise. The resignation shall be without prejudice to the rights, if any, of the Company under this Amendment or under the Amendment to Operating Agreement.

(d)      A vacancy shall exist if the Manager is removed, resigns, or dies, if there is an increase in the number of authorized positions or if the Members fail to elect a sufficient number of Managers to fill the authorized positions. If a vacancy occurs, it may be filled by the written consent of the Members.

8.   Liability for Performance of Duties; Duty of Care.

(a)      The Manager shall perform its managerial duties in good faith, in a manner that it reasonably believes to be in the best interests of the Company and its Members, and with such care, including reasonable inquiry, as an ordinarily prudent person in the same position would exercise in similar circumstances. A Manager who so performs the duties of Manager shall not incur any liability to the Company by reason of being or having been a Manager of the Company.

(b)      In performing its duties, the Manager shall be entitled to rely upon information, reports, opinions, or statements made by or received from the following Persons or groups, unless the Manager is in the possession of information regarding the matter in question sufficient to render such reliance unwarranted and provided that the Managers acts in good faith and after a reasonable inquiry when the need therefore is indicated by the circumstances:

(1)      Any officer, employee, or other agent of the Company whom the Manager reasonably believes to be trustworthy and competent regarding the matters presented;

(2)      Any attorney, independent accountant, or other professional with regard to matters which the Manager reasonably believes to be within such person's area of expertise or competence; or

(3)      Any committee upon which the Manager does not serve, duly created in accordance with the provisions of this Amendment or the Articles, as to matters within its designated authority, which committee the Manager reasonably believes to be competent regarding the matters within the ambit of its authority.

9.   Duty of Loyalty.   Subject to the provisions of Paragraph 10 of this Amendment, Manager owes the same duty of loyalty to the Company and the Members that a partner owes to the partnership and the partners of the partnership.

10.  Transactions Between Company and Manager.   Any Manager or Affiliate of a Manager may engage in transactions with the Company, notwithstanding that such transactions may constitute a conflict of interest, as long as the transaction is not expressly prohibited by this Amendment or the Act and both of the following conditions are met:

(a)      The terms and conditions of the transaction are fair and reasonable to the Company and are at least as favorable as those that are generally available from Persons capable of providing the same or similar services and those between parties operating at arms-length; and

(b)      The Members having no interest in the transaction (other than their interest as a Member) submits a written consent to consummating the transaction.

4

**EXHIBIT 2**                                            22

11. <u>Limitation on Exposing Members to Personal Liability</u>. Neither the Company nor the Manager nor any Member may take any action which will have the effect of exposing any Member of the Company to personal liability for the obligations of the Company, without first obtaining the consent of the affected Member.

12. <u>Limitations on Manager's Liability</u>. No Person who is a Manager shall be personally liable under any judgment of a court, or in any other manner, for any debt, obligation, or liability of the Company, whether that liability or obligation arises in contract, tort, or otherwise, solely by reason of being a Manager of the Company.

13. <u>Books, Records and Reporting</u>. The Manager shall maintain at the Company's principal place of business the following books and records:

(a) A current list of the full name and last-known business or residence address of each Member and Manager set forth in alphabetical order, together with the Capital Contribution, Capital Account, and Membership Interest of each Member;

(b) A copy of the Articles and all amendments thereto, together with executed copies of any powers of attorney pursuant to which the Articles or any amendments thereto were executed;

(c) Copies of the Company's federal, state, and local income tax or information returns and reports, if any, for the six (6) most recent taxable years;

(d) A copy of this Amendment and any amendments hereto, together with executed copies of any powers of attorney pursuant to which this Amendment or any amendments hereto were executed;

(e) Copies of the Company's financial statements, if any, for the six (6) most recent fiscal years;

(f) The books and records of the Company as they relate to its internal affairs since its inception; and

(g) True and correct copies of all relevant documents and records indicating the amount, cost and value of all of the property and assets of the Company.

14. <u>Accounting Methods</u>. The books and records of the Company shall be maintained in accordance with the accounting methods utilized for federal income tax purposes.

15. <u>Reports</u>. The Manager shall cause to be prepared and filed in a timely manner all reports and documents required by any governmental agency. The Manager shall cause to be prepared at least annually all information concerning the Company's operations that is required by the Members for the preparation of their federal and state tax returns. The Manager shall send to Members within ninety (90) days of the conclusion of the taxable year:

(a) All information concerning the Company's operations necessary to the preparation of the Members' individual federal and state income tax or information returns;

(b) An annual report containing a balance sheet as of the end of the fiscal year as well as an income statement and statement of changes in financial position, accompanied by the report thereon, if any, of the independent accountant engaged by the Company.

16. <u>Inspection Rights</u>. For purposes reasonably related to their interests in the Company, the Members shall have the right to inspect and copy the books and records of the Company during normal business hours, upon

5

**EXHIBIT 2**                                                                 23

reasonable request. The Manager shall provide the Members with copies of all Company records and documents to which Members are entitled under the Act.

17. <u>Bank Accounts</u>. The Member shall maintain all of the funds of the Company in a bank account or accounts in the name of the Company, at a depository institution or institutions to be determined by the Members.

To the extent that any provision in this Amendment to Manager Agreement may conflict in whole or in part with any provision in either the Manager Agreement or the Operating Agreement, the provisions in this Amendment to Manager Agreement will control and prevail.

IN WITNESS WHEREOF, the parties have executed or caused to be executed this Amendment, effective as of the date set forth at the commencement of this document.

CASTLE REAL ESTATE INVESTMENTS LLC,
A California limited liability company

Dated: 9-24-18

By: _____
    Michelle Halliwell, Member

BESORAT INVESTMENTS INC.,
A California corporation

Dated: 9/24/18

By: _____
    Tony Hershman, President

6

**EXHIBIT 2**    24

**EXHIBIT 3**                                    25

## PERSONAL GUARANTY

For value received, I, Michael Tony Hershman for and in consideration of BESORAT INVESTMENTS INC., a California corporation ("BII") of which I am President hereby unconditionally and personally guarantee and agree to bind myself to pay on demand any sum that may become due to Castle Real Estate Investments LLC ("Company") by BII whenever BII shall fail to pay as follows:

1. The difference between the disbursements Company receives from the sales of the 4743 Hillard Road, La Canada Flintridge, CA ("Hillard Property") and the 779 Briarcliff, Thousand Oaks, CA ("Briarcliff Property") and Company's total investments of $860,053.33 in the Hillard Property, the Briarcliff Property, and the 2285 W. 26th Street, Los Angeles, CA ("the "26th Street Property"); and

2. The difference between the disbursements Company receives from the sales of the Hillard Property and the Briarcliff Property to fund returns to Company of five percent (5%) on Company's total investments of $860,053.33 in the Hillard Property, the Briarcliff Property, and the 26th Street Property, which total five percent (5%) return equals $43,032.66 owed to Company.

This guaranty shall be a continuing and irrevocable guaranty and action may be taken against me for any non-payment without notice thereof.

I further guarantee that in the event of my default of payment of said obligations above, I agree to pay Company's attorneys' fees and other expenses incurred by Company in enforcing this Guaranty.

Dated: 9/24/16

By: _____
Michael Tony Hershman

**EXHIBIT 3**                                          26

**EXHIBIT 4**                                        **27**

| | |
|---|---|
| **From:** | Michelle Halliwell |
| **To:** | webblaw@gmail.com |
| **Subject:** | Fwd: Resignation |
| **Date:** | Tuesday, February 19, 2019 12:34:04 PM |

Below is a conversation, where tony says Besorat needs to resign, however from re-reading it, I am not sure that I technically accepted the resignation.  Can you take a look?

Sent from my iPhone

Begin forwarded message:

> **From:** Kathy Mills <kmills@allvalleyescrow.com>
> **Date:** February 11, 2019 at 5:08:25 PM PST
> **To:** Michelle Halliwell <halliwellm1@gmail.com>
> **Subject: RE: Resignation**
>
>
> Great, thank you!  ☺
>
> **From:** Michelle Halliwell [mailto:halliwellm1@gmail.com]
> **Sent:** Monday, February 11, 2019 4:50 PM
> **To:** Kathy Mills <kmills@allvalleyescrow.com>
> **Subject:** Re: Resignation
>
> Of course- I had another commitment today but I am right back at it tomorrow
>
> Sent from my iPhone
>
> On Feb 11, 2019, at 4:05 PM, Kathy Mills <kmills@allvalleyescrow.com> wrote:
>
>> Hi Michelle,
>>
>> We are just following up on the status of your LLC documents.
>>
>> Would you please email them over to us so we can forward to the title company for review?
>>
>> Thank you!
>>
>>
>> Kathy
>>
>> **From:** Michelle Halliwell [mailto:halliwellm1@gmail.com]
>> **Sent:** Friday, February 08, 2019 1:46 PM
>> **To:** Kathy Mills <kmills@allvalleyescrow.com>
>> **Subject:** Resignation

**EXHIBIT 4**                                                                 **28**

Kathy,

Go to the bottom of the email to see the start of the conversation conversation regarding his resignation.

Michelle Halliwell
Castle Real Estate Investments LLC
810 623 8363

Sent from my iPhone

Begin forwarded message:

> **From:** Tony Hershman <[tony@besorat.com](mailto:tony@besorat.com)>
> **Date:** January 28, 2019 at 3:40:38 PM PST
> **To:** Michelle Halliwell <[halliwellm1@gmail.com](mailto:halliwellm1@gmail.com)>
> **Subject: RE: update**
>
> At this point we believe that all debts of Besorat can be paid by the liquidation of all of the existing projects.
>
> Any deficit after that liquidation will be dealt with personally
>
> Thank you,
>
> # Tony Hershman
>
> President
>
> 
>
> 638 Lindero Canyon Rd. #420
> Oak Park Ca 91377
>
> CA BRE # 01352512
> Auctioneer Bond #57BSBHG1154
>
> Direct line- 805-402-8644

**EXHIBIT 4**                                   **29**

**From:** Michelle Halliwell <halliwellm1@gmail.com>
**Sent:** Monday, January 28, 2019 3:35 PM
**To:** Tony Hershman <tony@besorat.com>
**Subject:** Re: update

So you are still planning to honor the personal guaranty?

Sent from my iPhone

On Jan 28, 2019, at 3:23 PM, Tony Hershman
<tony@besorat.com> wrote:

> The email I sent is my resignation- I
> don't think we need more
>
> Thank you,
>
> # Tony Hershman
>
> President
> <image001.jpg>
>
>
> 638 Lindero Canyon Rd. #420
> Oak Park Ca 91377
>
> CA BRE # 01352512
> Auctioneer Bond #57BSBHG1154
>
> Direct line- 805-402-8644

**From:** Michelle Halliwell
<halliwellm1@gmail.com>
**Sent:** Monday, January 28, 2019 3:03 PM
**To:** Tony Hershman <tony@besorat.com>
**Subject:** Re: update

Ok, I will wait for your document, unless you
want me to resend mine?

Sent from my iPhone

On Jan 28, 2019, at 2:14 PM, Tony Hershman

**EXHIBIT 4**                                    30

<[tony@besorat.com](mailto:tony@besorat.com)> wrote:

Michelle

I need to have Besorat
resign as manager
effective immediately.

Besorat Investments In is
filing for bankruptcy by the
end of today.

I don't want to draft
you/castle into the BK.

I will still help you as much
as I can in an unofficial,
unpaid consulting roll if
you need me to.

I had a project in OC that
was in default and going to
go to trustee sale- I had to
file to give the investors a
chance to recover their
investment on that
project.

I'm tied up for the next
few days filing reports with
the court

Please email me any
questions

**EXHIBIT 4**                                    **31**

We can meet later this
week if needed

Thank you,

# Tony Hershman

## President

<image002.jpg>

638 Lindero Canyon Rd. #420
Oak Park Ca 91377

CA BRE # 01352512
Auctioneer Bond #57BSBHG1154

Direct line- 805-402-8644

**EXHIBIT 4**                                    **32**

**EXHIBIT 5**                                                      **33**

| Debtor | Besorat Investments, Inc. | Case number (*if known*) | |
|---|---|---|---|
| | Name | | |

## Request for Relief, Declaration, and Signatures

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is trued and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    January 28, 2019
MM / DD / YYYY

X _____          Michael Anthony Hershman
Signature of authorized representative of debtor          Printed name

Title    President

**18. Signature of attorney**

X _____          Date    January 28, 2019
Signature of attorney for debtor          MM / DD / YYYY

M. Jonathan Hayes
Printed name

RESNIK HAYES MORADI, LLP.
Firm name

17609 Ventura Blvd., Suite 314
Encino, CA 91316
Number, Street, City, State & ZIP Code

Contact phone    (818) 285-0100    Email address    jhayes@rhmfirm.com

(SBN 90388) CA
Bar number and State

**EXHIBIT 5**    34

**EXHIBIT 6**                                        35

| Debtor | Besorat Investments, Inc. | Case number (if known) | 1:19-bk-10202-VK |
|---|---|---|---|
| | Name | | |

| 3.3 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $348.00 |
|---|---|---|---|

Axcell Systems, Inc.
P.O. Box 127
Verdugo City, CA 91046

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred ___

**Basis for the claim:** 175 Painter St. Pasadena

Last 4 digits of account number ___

Is the claim subject to offset? ☒ No ☐ Yes

---

| 3.4 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $43,000.00 |
|---|---|---|---|

Brixton Developers & Co
3334 E. Coast Hwy #358
Corona Del Mar, CA 92625

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred ___

**Basis for the claim:** Services renderred at 4 Emerald Bay

Last 4 digits of account number ___

Is the claim subject to offset? ☒ No ☐ Yes

---

| 3.5 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $200,000.00 |
|---|---|---|---|

Castle Real Estate Investments, LLC
Michelle Halliwell
1014 S. Westlake Blvd., #14152
Westlake Village, CA 91361

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred ___

**Basis for the claim:** ___

Last 4 digits of account number ___

Is the claim subject to offset? ☐ No ☒ Yes

---

| 3.6 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $60,000.00 |
|---|---|---|---|

Charles McDonald
1731 Howe Avenue #123
Sacramento, CA 95825

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred 5/22/18

**Basis for the claim:** ___

Last 4 digits of account number ___

Is the claim subject to offset? ☒ No ☐ Yes

---

| 3.7 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $28.00 |
|---|---|---|---|

City of Los Angeles
P.O. Box 845252
Los Angeles, CA 90084

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred ___

**Basis for the claim:** Fee for brush celarance at 17137 Escalon, LA

Last 4 digits of account number ___

Is the claim subject to offset? ☒ No ☐ Yes

---

| 3.8 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $58.80 |
|---|---|---|---|

City of Newport Beach
P.O. Box 4923
Whittier, CA 90607

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred ___

**Basis for the claim:** 51 Linda Isle, Newport Beach

Last 4 digits of account number ___

Is the claim subject to offset? ☒ No ☐ Yes

---

| 3.9 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $1,129.43 |
|---|---|---|---|

City of Pasadena
Collections Unit
100 N. Garfield Ave., Room N106
Pasadena, CA 91109

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred ___

**Basis for the claim:** Service at 175 Painter St. Pasadena

Last 4 digits of account number ___

Is the claim subject to offset? ☒ No ☐ Yes

---

**EXHIBIT 6**

36

**EXHIBIT 7**                                                                 37

Debtor 1    **Michael A. Hershman**
Debtor 2    **Linda J. Hershman**

Case number *(if known)*  _____

| 4.3 2 | **Camilo Concha** | Last 4 digits of account number _____ | $0.00 |
|---|---|---|---|

Nonpriority Creditor's Name

**15303 Ventura Blvd. #850**
**Sherman Oaks, CA 91403**

Number Street City State Zip Code

**Who incurred the debt?** Check one.

☐ Debtor 1 only

☐ Debtor 2 only

■ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

■ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No

☐ Yes

**When was the debt incurred?**  _____

**As of the date you file, the claim is:** Check all that apply

☐ Contingent

☐ Unliquidated

☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans

☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

☐ Debts to pension or profit-sharing plans, and other similar debts

■ Other. Specify _____

---

| 4.3 3 | **Castle Real Estate Investments, LLC** | Last 4 digits of account number _____ | $200,000.00 |
|---|---|---|---|

Nonpriority Creditor's Name

**Michelle Halliwell**
**1014 S. Westlake Blvd. #14152**
**Westlake Village, CA 91361**

Number Street City State Zip Code

**Who incurred the debt?** Check one.

☐ Debtor 1 only

☐ Debtor 2 only

■ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

■ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No

☐ Yes

**When was the debt incurred?**  _____

**As of the date you file, the claim is:** Check all that apply

☐ Contingent

☐ Unliquidated

☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans

☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

☐ Debts to pension or profit-sharing plans, and other similar debts

■ Other. Specify _____

---

| 4.3 4 | **Cathleen Bloeser as Trustee of the** | Last 4 digits of account number _____ | $130,000.00 |
|---|---|---|---|

Nonpriority Creditor's Name

**Cathleen Bloeser Living Trust**
**30765 Pacific Coast Highway #314**
**Malibu, CA 90265**

Number Street City State Zip Code

**Who incurred the debt?** Check one.

☐ Debtor 1 only

☐ Debtor 2 only

■ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

■ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No

☐ Yes

**When was the debt incurred?**  _____

**As of the date you file, the claim is:** Check all that apply

☐ Contingent

☐ Unliquidated

☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans

☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

☐ Debts to pension or profit-sharing plans, and other similar debts

■ Other. Specify    **Deed of Trust**

---

**EXHIBIT 8**                                    **39**

M. Jonathan Hayes (Bar No. 90388)
Roksana D. Moradi-Brovia (Bar No. 266572)
**RESNIK HAYES MORADI LLP**
17609 Ventura Blvd., Suite 314
Encino, CA 91316
**Telephone:** (818) 285-0100
**Facsimile:** (818) 855-7013
jhayes@rhmfirm.com
roksana@RHMFirm.com

*Proposed Attorneys for Debtor*
Besorat Investments, Inc.

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>BESORAT INVESTMENTS, INC.,<br><br>Debtor. | Case No. 1:19-bk-10202-MB<br><br>Chapter 11<br><br>**STATUS REPORT; DECLARATION OF TONY HERSHMAN IN SUPPORT THEREOF**<br><br>Date: March 26, 2019<br>Time: 1:30 p.m.<br>Place: Courtroom 303<br>      21041 Burbank Blvd.<br>      Woodland Hills, CA 91367 |

**TO THE HONORABLE MARTIN BARASH, UNITED STATES**

**BANKRUPTCY JUDGE; THE UNITED STATES TRUSTEE; CREDITORS AND**

**ALL PARTIES IN INTEREST:**

     Besorat Investments, Inc., Debtor and Debtor-in-Possession herein (hereinafter the "Debtor"), commenced its bankruptcy case by filing a voluntary petition under Chapter 11 of 11 U.S.C. §101 et seq. (the "Bankruptcy Code") on January 28, 2019.

     The Debtor is operating its business and managing its financial affairs as a Debtor-in-Possession pursuant to §§1107 and 1108 of the Bankruptcy Code.

///

///

///

**RESNIK HAYES
MORADI LLP**

**EXHIBIT 8**                                              **40**

Per the Order of this Court (Docket No. 11), Debtor hereby submits its Preliminary Status Report:

**1.     A brief description of Debtor's business and the principal assets and liabilities of the estate; brief description of the events that led up to and caused the filing of this case.**

Besorat Investments, Inc. is a corporation under the laws of the state of California on February 15, 2017.  Tony Hershman is the President, CEO and he and his wife Linda are the sole shareholders.

**The nature of the debtor's business.**

The Debtor is in the business of buying real property, single family dwellings, remodeling them, and selling the properties.  On the petition date, the Debtor owned 15 properties as set forth below, all in the greater southern California area.    None of the properties are occupied.   The Debtor had only minimal funds in its bank accounts – less than $1,000.

Fourteen of the properties were purchased with first priority loans from two lenders, 5 Arch LLC and Anchor Loans LLC.  All but one of the properties have a second priority lien in favor of one or more individuals who loaned the funds to allow remodeling or a more comprehensive rehab.  For nine of the properties, the planned remodeling is not complete.  Various amounts are required to complete the work ranging from $40,000 to $900,000 which the Debtor does not have.  The Debtor's general intent is to transfer 11 of the properties, with the court's consent, to the respective junior lienholders on the property so that they can complete the planned work.

Five of the properties are on the market and ready to be sold.  One other property is listed with an agent for sale "as is" but the Debtor is seeking debtor-in-possession financing to complete the work so that the property can be sold for its "as completed" value.  One property listed for sale was in escrow on the petition date but that sale has since fallen out when the buyer refused to proceed with closing.

The Debtor has no employees and no vehicles.

**The major events or circumstances that led to the filing.**

The Debtor filed this chapter 11 case to stop a non-judicial foreclosure sale on two of the properties, 4 Emerald Lane, Laguna Beach and 1153 Roscomare, Los Angeles, CA.

**Description of the Debtor's Real property.**

The Debtor owns the following real property:

| Address | FMV | 1st Lien | comments |
|---------|-----|----------|----------|
| 4 Emerald Lane Laguna Beach, CA | $8.5 million | $6.32 million to 5 Arch Funding | Listed for sale at $7.95 million. |
| 12711 Christy Lane, Rossmoor, CA 90720 | $995,000 as is | $1.05 million to 5 Arch Funding | Plans complete for new 4,500 sq ft home – new construction |
| 3192 Oak Knoll Rossmore, CA 90720 | $995,000 as is | $1.05 million to 5 Arch Funding | Plans complete for new 4,500 sq ft home – new construction |
| 51 Linda Isle Newport Beach, CA | $8.7 million when complete | $5,227 Million to Anchor Loans | NOD, no NOS – plans approved by HOA to complete $900k remodel |
| 1153 Roscomare Los Angeles, CA 90077 | $4.8 – 5.3 million (when complete) | $3.3 million to 5 Arch Funding | $150,000 - $200,000 est to complete rehab |
| 3505 Twin Lake Ridge Westlake Vill, CA | $1.65 million | $1,212,754 Anchor | Listed for sale at $1.639 million |
| 5657 Tanner Ridge Ave. Westlake Vil, CA | $840,000 | $605,000 to Anchor Loans | Offer pending |

| 355 N. Wilton Pl, Los Angeles, CA 90004 | $1,475 million | $1,245 million | In escrow for $1.515 million |
|---|---|---|---|
| 2906 11th St., Santa Monica, CA 90405 | $1.500 million | $1.153 million to Anchor Loans | In escrow - $1.5 million |
| 2519 Chislehurst Pl., Los Angeles, CA 90027 | $2.6 in present condition | $2.2 mil to Anchor Loan | Was planning a $550,000 remodel |
| 4436 Alonzo, Encino, CA 91316 | $1.9 if rebuilt | $1.232 mil to Anchor loans | Needs $250k of work |
| 17137 Escalon, Encino, CA 91436 | $1,350 as is | $1.250 mil to Anchor Loan | Needs $300,000 of work |
| 95 W. Highland Dr., Camarillo, CA | $900,000 if finished | $475,000 to Anchor Loan | Needs $75,000 of work |
| 175 Painter St., Pasadena, CA 91103 | $900,000 | $650,000 to Al Womble | Needs $45,000 of work |
| 2068 W. 29th St., Los Angeles, CA 90018 | $929,000 if finished | $588,000 to Anchor Loans | Needs $40,000 of work |
|  |  |  |  |

These properties all have second deeds of trust owing to various investors.

As of the date of fling this Status Report, there are five pending Motions for Relief all set for March 27, 2019.  The Debtor will be filing a Notice of Non-Opposition on three of the motions; Christy Lane, Oka Knoll and Painter.  The Debtor will be opposing the MFR on Emerald Bay and Roscomare.

2. **What are the principal business, financial and legal disputes or problems to be resolved; when does the Debtor anticipate resolving them; what is the best method to resolve those disputes or problems expeditiously and cost-**

**effectively; what does the Debtor hope to accomplish in this case.**

The Debtor anticipates that, based on the economics of the property in its present condition, it will only be able to "save" four of the above properties, 4 Emerald Lane, Laguna Beach; 1153 Roscomare, Los Angeles, CA; 51 Linda Isle, Newport Beach and 3505 Twin Lake Ridge, Westlake Village.  As to the remaining 11 properties, Mr. Hershman has spoken to several of the junior lenders regarding transferring the property to them but has not, as of March 12, 2019, reached any agreements on proposed transfers.  In a worse case scenario, the Debtor will not oppose relief from stay on those properties.

Mr. Hershman has also been attempting to arrange postpetition financing ("DIP Financing") which will allow him to complete the necessary work on Linda Isle and Roscoemare, purchase insurance for the properties and provide adequate protection payments if necessary.  No DIP Financing agreement has been reached as of March 12, 2019.

The Debtor believes that each of the lenders has placed forced insurance on the properties.  Since the Debtor learned that the US Trustee would not accept the forced insurance and requires the Debtor to obtain its own insurance, the Debtor has been attempting to do so.

As stated above, the Debtor has accepted an offer to sell the 11th Street and Wilton Properties.  The sales prices should be enough to pay the liens although the junior lienholders might not be paid in full.  The Debtor expects to file Motions to Approve the Sales by March 18, 2019.

The Debtor expects to file a Motion for Turnover of $29,799.14 in funds that was paid to Sergio Gonzalez out of the sale proceeds of a property immediately prior to the petition date.  The Debtor had settled an issue with a junior lienholder and in essence acquired the lien position.  Mr. Gonzalez nevertheless sent a demand and a reconveyance to the escrow and was paid by escrow.  Those funds belong to the estate.

**3.**    **Is Debtor in full compliance with 11 U.S.C. § 521, § 1106 and 1007 and all applicable guidelines established by the United States Trustee.**

Debtor believes that it is substantial compliance with its obligations as a Debtor-in-Possession ("DIP") at this time, or will be by the time of the Status Conference.

The Debtor has not provided the required proof of insurance as mentioned above but expects to do so shortly.

The US Trustee has filed a Motion to Dismiss the case based on the lack of insurance. That Motion is set for April 9, 2019. The Debtor expects to have insurance before then and otherwise be in full compliance.

**4.** **Is Debtor using cash that any party claims as its cash collateral and, if so, on what date did Debtor obtain an order authorizing the use of such cash or the consent of such party.**

Cash collateral is not at issue in this case as none of the properties are rented.

**5.** **Identification of all professionals retained by or intended to be retained by the estate, the dates on which applications for the employment of such professionals were filed , the date on which orders were entered in response to such applications, if any, and a general description of the types of services to be rendered by each or the purpose of the employment.**

Debtor filed its application to employ Resnik Hayes Moradi LLP as general bankruptcy counsel on March 6, 2019 [Docket No. 41]. Debtor expects to retain a tax preparation professional shortly. Debtor expects to file Applications to Employ Real Estate Brokers for the properties he has sold or is trying to sell. At this time, Debtor does not intend to hire any other professionals.

**6.** **Projected income and expenses for the first six months of the case.**

As the Debtor has no income, any expenses would be speculative. If there are any proceeds from the anticipated sales, the Debtor will use the funds to purchase the insurance.

**7.** **Is this a small business case within the meaning of 11 U.S.C. § 101(51D).**

The Debtor's primary activity is the business of owning or operating real property or activities incidental thereto and therefore this is not a small business case.

**8.** **Is this a single asset real estate case within the meaning of 11 U.S.C. §101(51B).**

As the Debtor owns several pieces of real property with fewer than four residential units and therefore this is not a single asset real estate case.

**9.**   **Discuss any significant unexpired leases and executory contracts to which the debtor is a party and the Debtor's intentions with regard to these leases and contracts.**

None.

**10.**   **Proposed deadlines for filing proofs of claim and objection to claims.**

Debtor requests that the Court set a deadline for filing proofs of claim and proofs of interest so that it may get a better idea of what claims exist against it, and proposes July 1, 2019 (notice can go out by no later than April 1, 2019).  Debtor requests that there be no deadline set for objections to claims.

**11.**   **Proposed deadlines for filing disclosure statement in support of Chapter 11 plan or reorganization and Chapter 11 plan or reorganization.**

Debtor proposes September 1, 2019 as the deadline to file its disclosure statement in support of Chapter 11 plan or reorganization and Chapter 11 plan or reorganization.

Dated:  March 12, 2019                                **RESNIK HAYES MORADI LLP**

By:        /s/ M. Jonathan Hayes
              **M. Jonathan Hayes**
              **Roksana D. Moradi-Brovia**
              *Proposed Attorneys for Debtor*
              Besorat Investments, Inc.

**EXHIBIT 8**                                                                                           46

## DECLARATION OF TONY HERSHMAN

I, TONY HERSHMAN, declare as follows:

1.      I am over the age of eighteen (18).  I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would testify competently with respect thereto. Where facts are alleged upon information and belief, I believe them to be true.

2.      Besorat Investments, Inc. is a corporation under the laws of the state of California on February 15, 2017.  I am the President, CEO and my wife Linda and I are the sole shareholders.

3.      The Debtor is in the business of buying real property, single family dwellings, remodeling them, and selling the properties.  On the petition date, the Debtor owned 15 properties as set forth below, all in the greater southern California area.    None of the properties are occupied.   The Debtor had only minimal funds in its bank accounts – less than $1,000.

4.      Fourteen of the properties were purchased with first priority loans from two lenders, 5 Arch LLC and Anchor Loans LLC.  All but one of the properties have a second priority lien in favor of one or more individuals who loaned the funds to allow remodeling or a more comprehensive rehab.  For nine of the properties, the planned remodeling is not complete.  Various amounts are required to complete the work ranging from $40,000 to $900,000 which the Debtor does not have.  Our general intent is to transfer 11 of the properties, with the court's consent, to the respective junior lienholders on the property so that they can complete the planned work.

5.      Five of the properties are on the market and ready to be sold.  One other property is listed with an agent for sale "as is" but I am seeking debtor-in-possession financing to complete the work so that the property can be sold for its "as completed" value.  One property listed for sale was in escrow on the petition date but that sale has since fallen out when the buyer refused to proceed with closing.

RESNIK HAYES
MORADI LLP

**EXHIBIT 8**                    47

6. The Debtor has no employees and no vehicles.

7. The Debtor filed this chapter 11 case to stop a non-judicial foreclosure sale on two of the properties, 4 Emerald Lane, Laguna Beach and 1153 Roscomare, Los Angeles, CA.

8. I reviewed the table above with the various properties, the values and provided the various comments for each. The table is substantially accurate to the best of my knowledge. These properties all have second deeds of trust owing to various investors.

9. As of the date of fling this Status Report, there are five pending Motions for Relief all set for March 27, 2019. The Debtor will be filing a Notice of Non-Opposition on three of the motions; Christy Lane, Oak Knoll and Painter. The Debtor will be opposing the MFR on Emerald Bay and Roscomare.

10. I anticipate that, based on the economics of the property in its present condition, we will only be able to "save" four of the above properties, 4 Emerald Lane, Laguna Beach; 1153 Roscomare, Los Angeles, CA; 51 Linda Isle, Newport Beach and 3505 Twin Lake Ridge, Westlake Village. As to the remaining 11 properties, I have spoken or otherwise communicated with several of the junior lenders regarding transferring the property to them but have not, as of March 12, 2019, reached any agreements on proposed transfers. In a worst case scenario, the Debtor will not oppose relief from stay on those properties.

11. I have also been attempting to arrange postpetition financing ("DIP Financing") which will allow us to complete the necessary work on Linda Isle and Roscoemare, purchase insurance for the properties and provide adequate protection payments if necessary. No DIP Financing agreement has been reached as of March 12, 2019.

12. I believed that each of the lenders has placed forced insurance on the properties. Since I learned that the US Trustee would not accept the forced insurance and requires the Debtor to obtain its own insurance, I have been attempting to do so.

13. We accepted an offer to sell the 11th Street and Wilton Properties. The sales prices should be enough to pay the senior liens and most junior liens which will benefit the

estate.  We expect to file a Motion for Turnover of $29,799.14 in funds that was paid to

Sergio Gonzalez out of the sale proceeds of a property immediately prior to the petition

date.  I had settled an issue with a junior lienholder and in essence acquired the lien

position.  Mr. Gonzalez nevertheless sent a demand and a reconveyance to the escrow and

was paid by escrow.  Those funds belong to the estate.

14.    I believe that we are in substantial compliance with our obligations as a

Debtor-in-Possession ("DIP") at this time, or will be by the time of the Status Conference.

We have not provided the required proof of insurance as mentioned above but expect to do

so shortly.

15.    We expect to retain a tax preparation professional shortly.  We expect to file

Applications to Employ Real Estate Brokers for the properties he has sold or is trying to

sell.  At this time, we do not intend to hire any other professionals.

16.    There are no executory contract or unexpired leases.  None.


I declare under penalty of perjury pursuant to the laws of the United States of

America that the foregoing is true and correct.


Executed March 12, 2019, at _____, California.



By:    **SEE NEXT PAGE**
       **Tony Hershman**
       *Declarant*

RESNIK HAYES
MORADI LLP

**EXHIBIT 8**    10                                              49

estate. We expect to file a Motion for Turnover of $29,799.14 in funds that was paid to

1   Sergio Gonzalez out of the sale proceeds of a property immediately prior to the petition

2   date. I had settled an issue with a junior lienholder and in essence acquired the lien

3   position. Mr. Gonzalez nevertheless sent a demand and a reconveyance to the escrow and

4   was paid by escrow. Those funds belong to the estate.

5        14.    I believe that we are in substantial compliance with our obligations as a

6   Debtor-in-Possession ("DIP") at this time, or will be by the time of the Status Conference.

7   We have not provided the required proof of insurance as mentioned above but expect to do

8   so shortly.

9        15.    We expect to retain a tax preparation professional shortly. We expect to file

10  Applications to Employ Real Estate Brokers for the properties he has sold or is trying to

11  sell. At this time, we do not intend to hire any other professionals.

12       16.    There are no executory contract or unexpired leases. None.

13

14       I declare under penalty of perjury pursuant to the laws of the United States of

15  America that the foregoing is true and correct.

16

17  Executed March 12, 2019, at _Thousand Oaks_, California.

18

19

20                              By: _____
                                     Tony Hershman
                                     _Declarant_

21

22

23

24

25

26

27

28

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.
My business address is:  **17609 Ventura Blvd., Suite 314, Encino, CA 91316.**

A true and correct copy of the foregoing document entitled **STATUS REPORT;
DECLARATION OF TONY HERSHMAN IN SUPPORT THEREOF** will be served
or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-
2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING
("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s)
("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the
document. On **3/12/2019** I checked the CM/ECF docket for this bankruptcy case or
adversary proceeding and determined that the following person(s) are on the Electronic
Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☐   Service information continued on attached page.

- **Matthew Bouslog    MBouslog@gibsondunn.com, msandoval@gibsondunn.com**
- **Jerrold L Bregman    ecf@bg.law, jbregman@bg.law**
- **David I Brownstein    david@brownsteinfirm.com**
- **Russell Clementson    russell.clementson@usdoj.gov**
- **Theodore A Cohen    tcohen@sheppardmullin.com,
  amontoya@sheppardmullin.com**
- **Andrew Goodman    agoodman@andyglaw.com**
- **M. Jonathan Hayes    jhayes@rhmfirm.com,
  roksana@rhmfirm.com;rosario@rhmfirm.com;janita@rhmfirm.com;susie@r
  hmfirm.com;max@rhmfirm.com;priscilla@rhmfirm.com;pardis@rhmfirm.co
  m;russ@rhmfirm.com;rebeca@rhmfirm.com**
- **Nicolino I Iezza    niezza@spiwakandiezza.com**
- **Misty A Perry Isaacson    misty@ppilawyers.com,
  ecf@ppilawyers.com;perryisaacsonmr51779@notify.bestcase.com**
- **James R Selth    jim@wsrlaw.net,
  jselth@yahoo.com;brian@wsrlaw.net;vinnet@ecf.inforuptcy.com**
- **United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov**
- **Larry D Webb    Webblaw@gmail.com,
  larry@webblaw.onmicrosoft.com;r51666@notify.bestcase.com**

**II.  SERVED BY U.S. MAIL:** On **3/12/2019** I served the following person(s) and/or
entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by
placing a true and correct copy thereof in a sealed envelope in the United States Mail, first
class, postage prepaid, and addressed as follows. Listing the judge here constitutes a
declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the
document is filed.

☐   Service information continued on attached page

Honorable Martin R. Barash
United States Bankruptcy Court
Central District -- Valley Branch
21041 Burbank Boulevard
Suite 342
Woodland Hills, CA 91367

Besorat Investments, Inc.
638 Lindero Canyon Rd #420

**RESNIK HAYES
MORADI LLP**

**EXHIBIT 8** 11                                                    51

Oak Park, CA 91377

**ALL CREDITORS:**

5 AIF Sycamore 1, LLC and
5 Arch Funding Corp.
19800 MacArthur Blvd., Suite 1150
Irvine, CA 92612

5 Arch Funding
19800 MacArthur Blvd., Suite 1150
Irvine, CA 92612

5 Arch Funding /5 AIF Maple 2, LLC
19800 MacArthur Blvd., Suite 1150
Irvine, CA 92612

Advent Pools
P.O. Box 3351
Winnetka, CA 91396

Albert Womble ISAOA
Box 3609
Seal Beach, CA 90740

Alfredo Gonzalez
11834 East 166 St.

Artesia, CA 90701

Amarith Development LLC
500 S Main St., Suite 102
Orange, CA 92868

Amarith Development LLC
Arman Mirai
500 S Main St., Suite 102
Orange, CA 92868

American Express
P.O. Box 0001
Los Angeles, CA 90096

American Express National Bank
c/o Becket and Lee LLP
PO Box 3001
Malvern, PA 19355

Amit Yonay
1768 Mesa Ridge Ave
Westlake Village, CA 91362

Anchor Loans LP
5230 Las Virgenes Road, #105
Calabasas, CA 91302

Andrew  Michael Ward
1271 Granville Ave #404
Los Angeles, CA 90055

Andrew Michael Ward
1271 Granville Ave #404
Los Angeles, CA 90055

Arlington Investments LLC
68 Genoa St #A
Arcadia, CA 91006

Arturo Gonzalez
31320 Via Colinas, Suite 117
Westlake Village, CA 91362

Axcell Systems, Inc.
P.O. Box 127
Verdugo City, CA 91046

Ben Rugg
2995 Brynwood Drive
Fitchburg, WI 53711

Besorat Properties Rental Fund LLC
638 Lindero Canyon Rd #420
Oak Park, CA 91377

Braemar North Ranch Owners
c/o Ross Morgan & Company
P. O. Box 512019
Los Angeles, CA 90051

Brixton Developers & Co
3334 E. Coast Hwy #358
Corona Del Mar, CA 92625

California Dept of Tax and Fee Admi
Special Ops, MIC 55
PO Box 942879
Sacramento, CA 94279-0005

Castle Real Estate Investments, LLC
Michelle Halliwell
1014 S. Westlake Blvd., #14152
Westlake Village, CA 91361

Cathleen Bloeser as Trustee of the
Cathleen Bloeser Living Trust
30765 Pacific Coast Highway #314
Malibu, CA 90265

Charles McDonald
1731 Howe Avenue #123
Sacramento, CA 95825

Chester Joseph Smigielski
10 Wales St.
Thousand Oaks, CA 91360

City of Los Angeles
P.O. Box 845252
Los Angeles, CA 90084

City of Newport Beach
P.O. Box 4923
Whittier, CA 90607

City of Pasadena
Collections Unit
100 N. Garfield Ave., Room N106
Pasadena, CA 91109

City of Santa Monica
P.O. Box 7125
Artesia, CA 90702

Columbia Pacific Finance
P.O. Box 80506
City of Industry, CA 91716

Consumer Acceptance Corp.
15303 Ventura Blvd, #850
Sherman Oaks, CA 91403

Consumer Acceptance Corp.
c/o Michael E Adler, Esq.
Greenberg, Whitcombe, Takeuchi Gibs
21515 Hawthorne Blvd., Ste. 450
Torrance, CA 90503

David Homan General Contractor
4248 McLaughlin Avenue.
Los Angeles, CA 90066

David Spangler
4924 Balboa Blvd., #164
Encino, CA 91316

EDD
PO Box 826218
Sacramento, CA 94230-6218

Emerald Bay Community Assoc
c/o Jillisa OBrien P.C.
5 Corporate Park, #260
Irvine, CA 92606

Ezekiel Landscaping Services
Saul Arellano
P.O. Box 59649
Norwalk, CA 90652

Fernando Garcia De la Cruz and
Ricardo Fajardo
1916 S Ninth Street
Anaheim, CA 92802

Flaster Greenberg PC
1810 Chapel Ave. W.
Cherry Hill, NJ 08002

Franchise Tax Board
Attn: Bankruptcy Unit
P.O. Box 2952
Sacramento, CA 95812-2952

Francis Capital and Gavilan Capital
Multifamily Opportunity Fund I, LLC
555 Marin Street, Suite 140
Thousand Oaks, CA 91360

George Polous
15 Mistral
Aliso Viejo, CA 92656

GMDM Investments, LLC
7280 West Palmetto Park Rd, # 106-N
Boca Raton, FL 33433

Graham Barker
P.O. Box 5137
Chatsworth, CA 91311

Grant S. Pederson, Trustee of the
Pederson Family Trust
1022 Bradbury Court
Westlake Village, CA 91361

Hossein & Susan Balou
517 N Dwyer Dr
Anaheim, CA 92801

IKO Investments
1768 Mesa Ridge Ave
Westlake Village, CA 91362

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Jim & Celeste Kelber
1916 Court St
Newport Beach, CA 92663

RESNIK HAYES
MORADI  LLP

**EXHIBIT 8**

53

Joshua Marder
401 Rockefeller, Apt B1013
Irvine, CA 92612

KCB Plumbing
12630 Hoover Street
Garden Grove, CA 92846

Kenneth Wilkinson
3061 Michael Drive
Newbury Park, CA 91320

Kevin Kanegai
3314 Iroquois Ave
Long Beach, CA 90808

Kingdom Industry, LLC
2490 Turquoise Circle
Newbury Park, CA 91320

KM Interiors
574 Katherine Avenue
Van Nuys, CA 91401

LADWP
Attn: Bankruptcy Department
PO Box 5111
Los Angeles, CA 90051-0100

Laguna Beach County Water District
P.O. Box 987
Laguna Beach, CA 92652

Las Virgenes Municipal Water Distri
P.O. Box 4901
Whittier, CA 90607

Levbern Properties LLC
c/o Andrew Ward
1271 Granville Ave #404
Los Angeles, CA 90055

Linda Isla Vista  Community Assoc
c/o Keystone Property Management
16775 Von Karmen #100
Irvine, CA 92606

Lisa Marie Conley-Lambert
80 Borghese
Irvine, CA 92618

Los Angeles County Tax Collector
PO Box 54110
Los Angeles, CA 90054-0110

Maven Associates
1413 Kenneth Rd. Ste. 888
Glendale, CA 91210

Michael Anthony Hershman
638 Lindero Cyn #420
Oak Park, CA 91377

NuLookFloor
9262 Hyssop Dr.
Rancho Cucamonga, CA 91730

Orange County Treasurer & Tax Colle
P.O. Box 1438
Santa Ana, CA 92702

Los Angeles County Treasurer and tax
Collector
PO Box 54110
Los Angeles, CA 90054

County of Orange
PO Box 4515
Santa Ana, CA 92702

Orange County Treasurer & Tax Colle
12 Civic Center Plaza, Room G58
Santa Ana, CA 92702

Parkwood Estates Property Owners As
P.O. Box 3461
Thousand Oaks, CA 91359

Paulette Callahan
31320 Via Colinas Suite 117
Westlake Village, CA 91362

Phillip Salvadore
c/o Keller Williams
111 N. 1st St., Ste. 300
Burbank, CA 91502

Pleasant Valley Mutual Water Co.
1863 Las Posas Rd.
Camarillo, CA 93010

Poolfessionals
23052 Alicia, Ste H, #199
Mission Viejo, CA 92692

RCBM
1007 W. Kenneth Road
Glendale, CA 91202

RCBM General Contractor, Inc.
1007 W. Kenneth Rd.

Glendale, CA 91202

Reginald Evans
3488 Chestnut Dr
Norco, CA 92860

Reginald Evans
PO Box 11726
Costa Mesa, CA 92627

Ricardo Manciel
424 Diana Place
Fullerton, CA 92833

Robert & Tamorah Schuett
1991 Country Club Road
Thousand Oaks, CA 91360

Rodgers Group
11812 San Vicente Blvd # 100
Los Angeles, CA 90049

Roshanak Khojasteh
4820 Bellflower Ave #311
North Hollywood, CA 91601

Ryan Bradley
1350 E Los Angeles Ave Suite 3C,
Simi Valley, CA 93065

S & S Landscape Maintenance
P.O. Box 312
Moorpark, CA 93020

Sam Salgado
P.O. Box 312
Moorpark, CA 93020

Signature Staging LLC
1271 Granville Ave #404
Los Angeles, CA 90025

Smits Realty
26050 Mureau Road | Suite 101
Calabasas, CA 91301

SoCal Gas
P.O. Box C
Monterey Park, CA 91756

SoCal Gas
PO Box 30337
Los Angeles, CA 90030

Southern California Edison
P.O. Box 600

Rosemead, CA 91771-0001

SRG, LLP
16633 Ventura Blvd. 6th Floor
Encino, CA 91436

State Compensation Insurance Fund
P.O. Box 7441
San Francisco, CA 94120

Tam Le
15811 Exeter St
Westminster, CA 92683

The Kuther Living Trust
Ryan D. Kuther, Amy M. Kuther co Tr
1652 Folkstone Terrace
Westlake Village, CA 91361

Theodore A. Cohen
Shadi Farzan
Sheppard, Mullin, Richter & Hampton
LLP
333 South Hope Street, 43rd Floor
Los Angeles, CA 90071

The Kelber Community Trust
c/o Brutzkus Gubner
ATTN: Jerrold L. Bregman
21650 Oxnard St., Ste. 500
Woodland Hills, CA 91367

Tiffany Windsor
3063 Los Robles Rd.
Thousand Oaks, CA 91362

Todd Vigneux, Trustee of the
Vigneux Family Trust
442 Queensbury Street
Thousand Oaks, CA 91360

Tommy Lee Thomas
c/o Strategic Realty
27489 Agoura Rd
Agoura Hills, CA 91301

Ventura County Tax Collector
800 South Victoria Avenue
Ventura, CA 93009-1220

Vesta Home
1900 E. 25th St.
Vernon, CA 90058

Waste Management of Orange County
P.O. Box 541008

Los Angeles, CA 90054

Zahra Azizi
3301 Michelson Apt. #2213
Irvine, CA 92612

Waterlee, Inc
29500 Heathercliff Rd #42
Malibu, CA 90265

RETURNED MAIL/REMOVED CREDITORS:

(new address above)
David Spangler
27489 Agoura Road
Agoura Hills, CA 91301

**III. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE
TRANSMISSION OR EMAIL** (indicate method for each person or entity served):
Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **3/12/2019** I served the following
person(s) and/or entity(ies) by personal delivery, overnight mail service, or (for those who
consented in writing to such service method), by facsimile transmission and/or email as
follows.  Listing the judge here constitutes a declaration that personal delivery on the judge
<u>will be</u> completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the
foregoing is true and correct.

| **3/12/2019** | **Ja'Nita Fisher** | **/s/ Ja'Nita Fisher** |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

**EXHIBIT 9**                                                                        **57**

**PETER C. ANDERSON**
**UNITED STATES TRUSTEE**
Russell Clementson, Bar No. 143284
Trial Attorney
Katherine C. Bunker, Bar No. 240593
Trial Attorney
**UNITED STATES TRUSTEE**
915 Wilshire Blvd., Ste. 1850
Los Angeles, California 90017
Telephone: (213) 894-3326
Facsimile: (213) 894-0276
E-mail:  kate.bunker@usdoj.gov

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re | ) Case No. 1:19-bk-10202-MB |
| | ) |
| **BESORAT INVESTMENTS, INC.,** | ) Chapter 7 |
| | ) |
| Debtor. | ) **UNITED STATES TRUSTEE'S** |
| | ) **OPPOSITION TO MOTION TO (1)** |
| | ) **APPROVE SALE OF 51 LINDA ISLE,** |
| | ) **NEWPORT BEACH, CALIFORNIA 92660** |
| | ) **FREE AND CLEAR OF ALL LIENS,** |
| | ) **INTERESTS, CLAIMS, AND** |
| | ) **ENCUMBRANCES TO ATTACH TO** |
| | ) **PROCEEDS PURSUANT TO 11 U.S.C.** |
| | ) **§§ 363(b) AND (f); (2) APPROVE** |
| | ) **OVERBID PROCEDURES; (3)** |
| | ) **DETERMINE THAT BUYER IS** |
| | ) **ENTITLED TO PROTECTION** |
| | ) **PURSUANT TO 11 U.S.C. § 363(m); AND** |
| | ) **(4) APPROVE CARVE-OUT** |
| | ) |
| | ) Date:  June 12, 2019 |
| | ) Time: 11:00 a.m. |
| | ) Ctrm: 303 |
| | ) |
| | ) |

TO THE HONORABLE MARTIN R. BARASH, UNITED STATES BANKRUPTCY

JUDGE, AND OTHER PARTIES IN INTEREST:

The United States Trustee has reviewed the Motion to (1) Approve Sale of 51 Linda Isle,

Newport Beach, California 92660 Free and Clear of All Liens, Interests, Claims, and

**EXHIBIT 9**                                    58

1    Encumbrances to Attach to Proceeds Pursuant to 11 U.S.C. §§ 363(b) and (f); (2) Approve

2    Overbid Procedures; (3) Determine that Buyer Is Entitled to Protection Pursuant to 11 U.S.C. §

3    363(m); and (4) Approve Carve-Out ("Motion") and opposes the Motion on the following

4    grounds.

5    **A.    The Bankruptcy Case**

6         According to the debtor's status report, on February 15, 2017, Besorat Investments, Inc.

7    ("Debtor") began operating in California. [Docket No. 47]. Its sole shareholders are Tony

8    Hershman and his wife Linda. *Id.* The Debtor was in the business of buying real property,

9    single family dwellings, remodeling them, and selling the properties. *Id.* In order to obtain the

10   necessary funds to remodel or rehab the properties, the Debtor obtained loans in the millions of

11   dollars from investors who in return were given junior deeds of trust against the properties. *Id.*

12   Unbeknownst to the investors, allegedly not all of deeds of trust were properly granted and/or

13   recorded as promised by the Debtor.

14        On January 28, 2019, the Debtor filed for bankruptcy relief under Chapter 11 of the

15   Bankruptcy Code. As of the petition date, the Debtor owned 15 residential real properties

16   located throughout Southern California and had less than $1,000 in its bank account. *Id.* Out of

17   the 15 properties, nine were in the process of being remodeled, five were on the market and

18   ready to be sold, and one was listed with an agent for sale "as is" but the Debtor was hoping to

19   obtain financing to complete the work and sell it at its optimal value. *Id.* All but one of the

20   properties had junior priority liens in favor of one or more individuals who loaned the funds to

21   allow remodeling or a more comprehensive rehab. *Id.* The bankruptcy filing was initiated to

22   stop non-judicial foreclosure sales on two of the properties. *Id.*

23        On April 11, 2019, the case was ordered converted to Chapter 7 and Nancy Zamora was

24   appointed the Chapter 7 Trustee. As of May 20, 2019, the Claims Register lists that

25   $3,214,138.35 in total claims have been filed, including $1,137,992.52 in secured claims and

26   $6,240.74 in priority claims.

27   //

28   //

**EXHIBIT 9** 2                                                      **59**

**B.      The Motion**

The Motion seeks authority for the Chapter 7 Trustee ("Trustee") to short sell one of the Debtor's properties located at 51 Linda Isle, Newport Beach, California 92660 ("Property") for $5,400,000.00 ("Purchase Price") to the Shahbazi Family Trust free and clear of all liens, interests, claims, and encumbrances and to authorize the Trustee to pay all customary closing costs, undisputed tax liens, and the 5% broker's commission.  Motion at 7.[1]  The sale will be subject to overbidding, but currently the Trustee is unaware of any overbidders.  *Id.* at 13-14 & 32.  As of the filing of the Motion, the Property had been on the MLS for 17 days, and during this short period of time, the Property had been marketed through the mailing of postcards to residents in the vicinity of the Property, private showings, and the facilitation of broker-led showings for several agents who were provided the combination to the lock-box on the Property.  *Id.* at 31.

A preliminary title report for the Property indicates that there are $7,172,145.86 in liens encumbering the Property, including

- A first deed of trust held by Anchor Loans, LP ("Anchor") for $4,657,730.93;
- A second deed of trust held by Strategic Emerging Economics, Inc. ("Strategic") for $805,826.24;
- A third deed of trust held by a number of investors, including Francis Capital & Gavilan Capital Multifamily Opportunity Fund I,[2] (collectively "Junior Lienholders") for $1,697,720.00; and
- Tax liens of $87,304.01.

*Id.* at 10.  Despite the extent of the liens encumbering the Property in excess of the amount of the proposed Purchase Price, the Trustee proposes to sell the Property free and clear of interests pursuant to 11 U.S.C. § 363(f) based on the Trustee's belief that Anchor's lien and Strategic's

---

[1] Page references to the Motion are the ECF page numbers on the top of the page.

[2] Francis Capital & Gavilan Capital Multifamily Opportunity Fund I ("Francis Capital") holds a 71.7268% interest in the third deed of trust, providing it with the majority interest.  Motion at 10.

**EXHIBIT 9**  3                                                      **60**

1   lien are both in bona fide dispute and the carve-out the Trustee is obtaining from the Junior

2   Lienholders. *Id.* at 16.

3         Specifically, the Motion asserts that Anchor's lien is in bona fide dispute because the

4   Trustee believes there may be a claim for equitable subordination pursuant to 11 U.S.C. § 510(c)

5   or a claim that there are equitable grounds to adjust Anchor's default interest rate.[3] *Id.* at 17-20.

6   In regard to Strategic's lien, based on an argument raised by Francis Capital in response to

7   Strategic's pending relief from stay motion [Docket No. 124], the Trustee contends that a

8   marshalling argument can be made against Strategic's interest in the Property because Strategic's

9   lien is cross-collateralized by nine non-debtor properties that allegedly have more than enough

10  equity to pay the lien in full prior to Strategic having to resort to the Property. *See id.* at 20.

11        The carve-out with the Junior Lienholders provides that after resolution of the first and

12  second deeds of trust encumbering the Property and after subtracting closing costs and taxes

13  estimated at $407,304 ($270,000 broker's commission at 5% + $50,000 in closing costs +

14  $87,304 in property taxes), the Junior Lienholders will carve-out the following from the net

15  proceeds owed to them:

16      -   $0 to $32,500: 100% will go to the estate;

17      -   $32,501 to $100,000: 20% will go to the estate; 80% will go to the Junior

18          Lienholders; and

19      -   Over $100,000: 10% will go to the estate; 90% will go to Junior Lienholders

20  (the "Carve-Out").[4] *Id.* at 11.  If the Junior Lienholders are successful with the marshalling

21  argument[5] and Strategic's lien is paid off from the non-debtor properties, it is estimated that the

---

22  [3] The Trustee has commenced her investigation in the Debtor's business dealings with Anchor,

23  however, the investigation is just in its early discovery stages.  Motion at 28.

24  [4] The Carve-Out agreement is between the Trustee and Francis Capital.  Motion at 11.  The email

25  attached to the Motion as evidence of the Carve-Out states that Francis Capital is "in the process
    of contacting the other 29% holders of the third deed of trust[,]" and that it was "confident that

26  [it] can get everyone on board[.]" *Id.* at 78.  The Motion does not contain any other information
    to confirm whether the other 29% holders of the third deed of trust have consented to the Carve-

27  Out.

28  [5] Strategic's pending relief from stay motion is set be heard on June 12, 2019, the same date as
    the Motion.  Thus, there has been no ruling on the marshalling argument made by Francis

**EXHIBIT 9**   4   61

current Purchase Price would cause the estate to receive $49,626.00 pursuant to the Carve-Out.

*Id.* at 21.  In exchange for the Carve-Out, the Trustee has agreed to the following:

> (1) the Trustee will support Junior Lienholders' marshalling argument against
> Strategic; (2) the Trustee will not, in any negotiations with Strategic, agree to
> oppose the Junior Lienholders' marshalling argument; (3) should the Trustee
> negotiate a carve-out with Strategic, such carve-out will not apply unless and until
> Strategic has first monetized the 9 non-debtor sources for satisfaction of its claim;
> (4) the agreed upon Carve-Out is from net proceeds, not including payment of
> taxes, broker commissions and other closing costs; (5) if the Trustee is able to
> negotiate a carve-out with Anchor, the Junior Lienholder [sic] shall receive 25%
> of any carve-out negotiated with Anchor and the Estate will receive 75% of any
> such carve-out; and (6) if the Trustee is able to negotiate a carve-out with
> Strategic, Junior Lienholder [sic] shall receive 40% of any such carve-out and the
> Estate will receive 60% of any such carve-out.

*Id.* at 11.

The Motion states that "the estimate[d] Carve-Out is likely to result in at least

$41,653.20[6] for the Estate, subject to overbid," and thus, "the Carve-Out should be approved as

a benefit of the Estate which is likely to result in a meaningful distribution to creditors."  *Id.* at

22.  The Trustee acknowledges in her declaration filed in support of the Motion that the Carve-

Out is completely dependent on the Junior Lienholders prevailing on their marshalling argument

against Strategic if there is no overbidding or subordination of the Anchor claim.  *See id.* at 29.

1.    <u>The Motion Fails to Provide Sufficient Evidence that the Carve-Out Will Provide
a Meaningful Distribution to Nonpriority, Unsecured Creditors of the Estate</u>

The Motion and Trustee's declaration are void of any information as to how the estimated

proceeds to the estate will be distributed.  "It is universally recognized . . . that the sale of a fully

encumbered asset is generally prohibited."  *In re KVN Corp., Inc.*, 514 B.R. 1, 5 (9th Cir. BAP

2014).  *See also Morgan v. K.C. Mach. & Tool Co. In re K.C. Mach. & Tool Co.)*, 816 F.2d 238,

---

Capital.  To date, the Court's electronic docket for this case shows that the Trustee has not filed
her own opposition to Strategic's relief from stay motion nor filed any joinder to Francis
Capital's opposition.

[6] The Motion provides for two different figures as to what the estimated proceeds from the
Carve-Out will be if Francis Capital is successful with its marshalling argument against
Strategic.  *Compare* Motion at 21 & 29 (listing estimated Carve-Out at $49,626.60) *with* Motion
at 22 (listing estimated Carve-Out at $41,653.20).

EXHIBIT 9   5                                                        62

245-46 (6th Cir. 1987) ("It is generally recognized that a chapter 7 trustee should not liquidate

fully encumbered assets, for such action yields no benefit to unsecured creditors."); *In re

Covington*, 368 B.R. 38, 41 (Bankr. E.D. Cal. 2006) ("[W]hen an asset is fully encumbered by a

lien, it is considered improper for a chapter 7 trustee to liquidate the asset."); *In re Preston

Lumber Corp.*, 199 B.R. 415, 416 (Bankr. N.D. Cal. 1996) (actual conflict of interest arises when

the trustee sees he can make more money for himself by liquidating collateral for a secured

creditor than he can by asserting a claim against the secured creditor on behalf of the estate).

When a trustee encounters a fully encumbered asset, in most situations, "the trustee's proper

function is to abandon the property, not administer it, because the sale would yield no benefit to

unsecured creditors." *KVN Corp.*, 514 B.R. at 6.

"Despite the general rule prohibiting the sale of fully encumbered property, chapter 7

trustees may seek to justify the sale through a negotiated carve-out agreement with the secured

creditor." *KVN Corp.*, 514 B.R. at 6. The Official Handbook of Chapter 7 Trustees

("Handbook") provides trustees with further guidance on carve-out agreements in the context of

a sale and states that:

> A trustee may sell assets only if the sale will result in a meaningful distribution to
> creditors. . . The trustee may seek a "carve-out" from a secured creditor and sell
> the property at issue if the "carve-out" will result in a meaningful distribution to
> creditors. The trustee must also consider whether the cost of administration or tax
> consequences of any sale would significantly erode or exhaust the estate's equity
> interest in the asset. If the sale will not result in a meaningful distribution to
> creditors, the trustee must abandon the asset. See Handbook Chapter 4.C.3.e
> regarding abandonments.

Handbook, Chapter 4, C. 9.a, page 4-14.

Approval of a carve-out agreement used by a chapter 7 trustee to rebut the general rule

should be carefully reviewed to ensure that the sale is beneficial to the estate. *See KVN Corp.*,

514 B.R. at 7 ("Although there is no per se ban on carve-out agreements, [such agreements] . . .

have been reviewed under a standard of heightened scrutiny due to past abuses."). In

determining whether the presumption has been rebutted, the following inquiry should be made:

> Has the trustee fulfilled his or her basic duties? Is there a benefit to the estate; i.e.,
> prospects for a meaningful distribution to unsecured creditors? Have the terms of
> the carve-out agreement been fully disclosed to the bankruptcy court? If the

**EXHIBIT 9** 6                                                                 **63**

answer to these questions is in the affirmative, then the presumption of
impropriety can be overcome.

*Id.* at 8.

Here, the Motion provides insufficient information to answer each of these questions in
the affirmative.  Specifically, the Motion fails to provide sufficient information for the United
States Trustee or parties in interest to analyze the expected distribution of proceeds from the sale
or to determine whether the *KVN Corp.* factors have been satisfied.  In fact, the current Purchase
Price does not even cover payment of Anchor's and Strategic's liens.  Thus, the Carve-Out is
completely dependent on the Junior Lienholders prevailing on their marshalling argument
against Strategic if there is no overbidding or subordination of the Anchor claim.  Even the
Trustee acknowledges in her declaration that for the Carve-Out to provide any benefit to the
estate, the Junior Lienholders will need to prevail in their marshalling argument against
Strategic.  Motion at 29.  The Motion is unpersuasive as to how the proposed sale can be
approved in advance of each necessary contingency first being resolved.

Even assuming *arguendo* that Francis Capital is successful with its marshalling argument
against Strategic, the estate is estimated to receive just $49,626.60 from the Carve-Out.  Motion
at 21 & 29.  Notably, although the Motion states that Carve-Out "is likely to result in a
meaningful distribution to creditors[,]" *id.* at 22, it lacks any information from which the Court
and/or any interested party can determine what amount will be distributed to unsecured creditors.
Further, except for the $270,000 estimated broker's commission and closing costs, no
information has been provided about the administrative costs associated with the sale of the
Property, including the legal fees that have been incurred to date or the Trustee's anticipated
compensation resulting from the sale.  Nor is there any information as to whether a specific
dollar amount or percentage will be earmarked for unsecured creditors.

Further, the transaction described in the Motion is complex.  Other legal outcomes—one
of which is entirely controlled by a third party, not the estate—must successfully occur before
the Carve-Out can be effectuated.  Additionally, there are provisions in the Carve-Out which
require the estate to share with the Junior Lienholders proceeds received from carve-outs the
estate may obtain with Anchor and Strategic.  The Motion does not analyze these provisions.  It

**EXHIBIT 9**   7                                                    **64**

is unclear that it is in the best interests of the estate to agree to share these possible carve-outs with the Junior Lienholders, particularly where the estate will bear the cost to obtain them. Moreover, the Carve-Out was negotiated between the Trustee and Francis Capital. There is no evidence in the Motion to establish that all the Junior Lienholders agree with the terms of the Carve-Out.

As with an earlier sale motion filed in this case to which the United States Trustee also has objected, this Motion leaves the parties—including the holders of over $2 million in unsecured claims who have the greatest interest in the details of the proposed sale—in no position to determine whether the proposed sale is in the estate's best interests or to otherwise meaningfully exercise their rights.[7]

2.      The $270,000 Broker's Commission Is Excessive and Payment is Premature
         Based on the Unknown Distribution to be provided to the Estate

The Motion seeks authority to pay out of escrow a real estate brokerage fee equal to 5% of the Purchase Price. Motion at 24. Based on the current Purchase Price, this would amount to a $270,000 broker's commission, which could increase if there is overbidding. *Id.* at 21.

As discussed above, certain events must occur before the estate will receive any monies under the Carve-Out. At this point in time, it is unknown whether Francis Capital will be successful with its marshalling argument, whether there will be any overbidders at the sale hearing, or whether the Trustee will be successful in subordinating Anchor's lien and/or obtaining carve-outs from Anchor or Strategic. Thus, if the real estate brokers' compensation is approved and paid out of escrow, the real estate brokers involved in the transaction, including the Trustee's broker whose application to be employed as an estate professional is pending, would have been paid collectively $270,000—about five times more than what the estate will receive to pay any other administrative expenses associated with the Sale—before the speculative benefit to

---

[7] The United States Trustee recognizes that a many of the Debtor's investors, who represent a significant portion of the unsecured creditors, may be victims of fraud or malfeasance by the Debtor and that the distribution from the proposed sale may be one of the few assets to provide them any return on their investment.

**EXHIBIT 9**  8                                          65

1  the estate from their efforts has been realized.[8]  The Trustee has a duty to make sure that estate

2  property is not sold solely for professionals' benefit.  The brokers' commission, as currently

3  structured, may well make it impossible for the Trustee to fulfill that duty.[9]

4  ### CONCLUSION

5  It is the Trustee's burden to show that the sale of the Property will benefit the Estate and

6  provide a meaningful distribution to unsecured creditors.  The Motion fails to do this.

7  Accordingly, the Court should not approve the Motion unless the Trustee provides adequate

8  evidence, including a detailed estimate of how the Carve-Out will be distributed and an

9  explanation as to why the broker commission is not excessive, to establish that the sale of the

10  Property would be proper under the Code and controlling authority.

11  Dated: May 28, 2019                             UNITED STATES TRUSTEE

12                                                  By: /s/ Katherine C. Bunker
                                                        Katherine C. Bunker

13

14

15

16

17

18

19

20

21

22

23

24

25  [8] The estate's real estate broker is entitled to 50% of the total commission.  Accordingly, she
26  would receive at least $135,000 and possibly more if there are overbidders.

27  [9] The pending employment application for the real estate broker states that approval of the
    broker's compensation is to be pursuant to § 330.  [Docket No. 170].  Thus, the United States
28  Trustee believes that the Court has the ability to reduce the commission if it does not represent
    reasonable compensation based on the facts and circumstances surrounding the broker's services.

**EXHIBIT 9**  9                                          **66**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: **915 Wilshire Blvd., Suite 1850, Los Angeles, CA 90017**

A true and correct copy of the foregoing document entitled (*specify*): **UNITED STATES TRUSTEE'S OPPOSITION TO MOTION TO (1) APPROVE SALE OF 51 LINDA ISLE, NEWPORT BEACH, CALIFORNIA 92660 FREE AND CLEAR OF ALL LIENS, INTERESTS, CLAIMS, AND ENCUMBRANCES TO ATTACH TO PROCEEDS PURSUANT TO 11 U.S.C.   §§ 363(b) AND (f); (2) APPROVE OVERBID PROCEDURES; (3) DETERMINE THAT BUYER IS ENTITLED TO PROTECTION PURSUANT TO 11 U.S.C. § 363(m); AND (4) APPROVE CARVE-OUT,** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **5/28/2019**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On **5/28/2019**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **N/A**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 5/28/2019 | Veronica M. Hernandez | /s/  Veronica M. Hernandez |
|-----------|------------------------|----------------------------|
| Date | Printed Name | Signature |

**EXHIBIT 9**                    67

**SERVICE LIST FOR PROOF OF SERVICE**

**SERVED ELECTRONICALLY**
Russell Clementson
Russell.clementson@usdoj.gov
Katherine Bunker    kate.bunker@usdoj.gov
Matthew Bouslog MBouslog@gibsondunn.com,
msandoval@gibsondunn.com
Jerrold L Bregman ecf@bg.law, jbregman@bg.law
David I Brownstein david@brownsteinfirm.com
Theodore A Cohen tcohen@sheppardmullin.com,
amontoya@sheppardmullin.com
Jorge A Gaitan ecf@bg.law, jgaitan@bg.law
Oscar Garza ogarza@gibsondunn.com,
mpeck@gibsondunn.com
Andrew Goodman agoodman@andyglaw.com
M. Jonathan Hayes jhayes@rhmfirm.com,
roksana@rhmfirm.com;rosario@rhmfirm.com;
janita@rhmfirm.com;susie@rhmfirm.com;
max@rhmfirm.com;priscilla@rhmfirm.com;
pardis@rhmfirm.com;russ@rhmfirm.com;
rebeca@rhmfirm.com
Garrick A Hollander ghollander@wcghlaw.com,
pj@wcghlaw.com;jmartinez@wcghlaw.com;
Meir@virtualparalegalservices.com
Nicolino I Iezza niezza@spiwakandiezza.com
Misty A Perry Isaacson misty@ppilawyers.com,
ecf@ppilawyers.com;
perryisaacsonmr51779@notify.bestcase.com
S Margaux Ross margaux.ross@usdoj.gov
James R Selth jim@wsrlaw.net,
jselth@yahoo.com;brian@wsrlaw.net;
gabby@wsrlaw.net;vinnet@ecf.inforuptcy.com
Kelly Sweeney ksweeney@spiwakandiezza.com,
nbuttis@spiwakandiezza.com
Larry D Webb Webblaw@gmail.com,
larry@webblaw.onmicrosoft.com;
r51666@notify.bestcase.com
Allan S Williams allan@aswlawgroup.com
Nancy J Zamora (TR) zamora3@aol.com,
nzamora@ecf.axosfs.com
David R Zaro dzaro@allenmatkins.com

**SERVED BY U.S. MAIL**
Honorable Martin Barash
21041 Burbank Blvd.
Woodland Hills, CA 91367

Besorat Investments, Inc.
638 Lindero Canyon Rd #420
Oak Park, CA 91377

Resnik Hayes Moradi LLP
17609 Ventura Blvd., Ste. 314
Encino, CA 91316

SLBIGGS
10960 Wilshire Blvd., 7th Fl.
Los Angeles, CA 90024

**EXHIBIT 9**                    68

**EXHIBIT 10**                                                                                      69

Debtor 1    **Michael A. Hershman**
Debtor 2    **Linda J. Hershman**                                                    Case number *(if known)*

|  | **Debtor 1** | | **Debtor 2** | |
|---|---|---|---|---|
|  | Sources of income<br>Check all that apply. | Gross income<br>(before deductions and<br>exclusions) | Sources of income<br>Check all that apply. | Gross income<br>(before deductions<br>and exclusions) |
|  | ■ Wages, commissions,<br>bonuses, tips<br>□ Operating a business | $0.00 | ■ Wages, commissions,<br>bonuses, tips<br>□ Operating a business | $1,739.50 |
| **For last calendar year:**<br>**(January 1 to December 31, 2019 )** | ■ Wages, commissions,<br>bonuses, tips<br>□ Operating a business | $15,167.25 | □ Wages, commissions,<br>bonuses, tips<br>□ Operating a business | $0.00 |
|  | □ Wages, commissions,<br>bonuses, tips<br>□ Operating a business | $0.00 | ■ Wages, commissions,<br>bonuses, tips<br>□ Operating a business | $580.00 |
| **For the calendar year before that:**<br>**(January 1 to December 31, 2018 )** | □ Wages, commissions,<br>bonuses, tips<br>■ Operating a business | $-282,473.00 | □ Wages, commissions,<br>bonuses, tips<br>□ Operating a business | $0.00 |

5.  **Did you receive any other income during this year or the two previous calendar years?**
    Include income regardless of whether that income is taxable. Examples of *other income* are alimony; child support; Social Security, unemployment, and other public benefit payments; pensions; rental income; interest; dividends; money collected from lawsuits; royalties; and gambling and lottery winnings. If you are filing a joint case and you have income that you received together, list it only once under Debtor 1.

    List each source and the gross income from each source separately. Do not include income that you listed in line 4.

    □  No
    ■  Yes. Fill in the details.

|  | **Debtor 1** | | **Debtor 2** | |
|---|---|---|---|---|
|  | Sources of income<br>Describe below. | Gross income from<br>each source<br>(before deductions and<br>exclusions) | Sources of income<br>Describe below. | Gross income<br>(before deductions<br>and exclusions) |
| **For the calendar year before that:**<br>**(January 1 to December 31, 2018 )** | Rental Income | $254,473.00 | | |

| **Part 3:** | **List Certain Payments You Made Before You Filed for Bankruptcy** |
|---|---|

6.  **Are either Debtor 1's or Debtor 2's debts primarily consumer debts?**

    ■  No.    **Neither Debtor 1 nor Debtor 2 has primarily consumer debts.** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

    During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $6,825* or more?

    ■  No.    Go to line 7.
    □  Yes    List below each creditor to whom you paid a total of $6,825* or more in one or more payments and the total amount you paid that creditor. Do not include payments for domestic support obligations, such as child support and alimony. Also, do not include payments to an attorney for this bankruptcy case.

    * Subject to adjustment on 4/01/22 and every 3 years after that for cases filed on or after the date of adjustment.

Software Copyright (c) 1996-2020 Best Case, LLC - www.bestcase.com
                                    **EXHIBIT 10**                                    Best Case Bankruptcy

                                                                                        **70**

**EXHIBIT 11**                                                                          71

**LLC-12**

18-C79339

**Secretary of State**
**Statement of Information**
(Limited Liability Company)

# FILED

In the office of the Secretary of State
of the State of California

**AUG 20, 2018**

**IMPORTANT** — Read instructions **before completing this form.**

**Filing Fee – $20.00**

**Copy Fees** – First page $1.00; each attachment page $0.50;
Certification Fee - $5.00 plus copy fees

**This Space For Office Use Only**

**1. Limited Liability Company Name** (Enter the exact name of the LLC. If you registered in California using an alternate name, see instructions.)

CASTLE REAL ESTATE INVESTMENTS LLC

| 2. 12-Digit Secretary of State File Number | 3. State, Foreign Country or Place of Organization (only if formed outside of California) |
|---|---|
| 201718410327 | CALIFORNIA |

**4. Business Addresses**

| | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| a. Street Address of Principal Office - Do not list a P.O. Box<br>1014 S Westlake Blvd #14152 | Westlake Village | CA | 91361 |
| b. Mailing Address of LLC, **if different than item 4a**<br>1014 S Westlake Blvd #14152 | Westlake Village | CA | 91361 |
| c. Street Address of **California** Office, if Item 4a is not in California - Do not list a P.O. Box<br>1014 S Westlake Blvd #14152 | Westlake Village | CA | 91361 |

**5. Manager(s) or Member(s)**

If no **managers** have been appointed or elected, provide the name and address of each **member**. At least one name and address must be listed. If the manager/member is an individual, complete Items 5a and 5c (leave Item 5b blank). If the manager/member is an entity, complete Items 5b and 5c (leave Item 5a blank). Note: The LLC cannot serve as its own manager or member. If the LLC has additional managers/members, enter the name(s) and addresses on Form LLC-12A (see instructions).

| a. First Name, if an individual - Do not complete Item 5b | Middle Name | Last Name | Suffix |
|---|---|---|---|
| Michelle | | Halliwell | |

b. Entity Name - Do not complete Item 5a

| c. Address | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 1014 S Westlake Blvd #14152 | Westlake Village | CA | 91361 |

**6. Service of Process** (Must provide either Individual OR Corporation.)

**INDIVIDUAL** – Complete Items 6a and 6b only. Must include agent's full name and California street address.

| a. California Agent's First Name (if agent is **not** a corporation) | Middle Name | Last Name | Suffix |
|---|---|---|---|
| | | | |

| b. Street Address (if agent is **not** a corporation) - **Do not enter a P.O. Box** | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| | | CA | |

**CORPORATION** – Complete Item 6c only. Only include the name of the registered agent.

c. California Registered Corporate Agent's Name (if agent is a corporation) – Do not complete Item 6a or 6b

MY CORPORATION BUSINESS SERVICES, INC. (C2222444)

**7. Type of Business**

a. Describe the type of business or services of the Limited Liability Company
Real Estate Investment

**8. Chief Executive Officer, if elected or appointed**

| a. First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| Michelle | | Halliwell | |

| b. Address | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 1014 S Westlake Blvd #14152 | Westlake Village | CA | 91361 |

**9. The Information contained herein, including any attachments, is true and correct.**

| 08/20/2018 | Michelle Halliwell | | CEO | |
|---|---|---|---|---|
| Date | Type or Print Name of Person Completing the Form | | Title | Signature |

**Return Address (Optional)** (For communication from the Secretary of State related to this document, or if purchasing a copy of the filed document enter the name of a person or company and the mailing address. This information will become public when filed. SEE INSTRUCTIONS BEFORE COMPLETING.)

Name:

Company:

Address:

City/State/Zip: